UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 25-68-DLB-CJS

DARA JANOSKY, on behalf of herself                                    PLAINTIFF
and all others similarly situated

v.                          MEMORANDUM OPINION AND ORDER

UNITED SURGICAL PARTNERS INTERNATIONAL, INC.                DEFENDANT

*** *** *** ***

## I.      INTRODUCTION

This matter is before the Court on Defendant United Surgical Partners International, Inc.'s Motion to Change Venue (Doc. # 30), in which it moves the Court to transfer this case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1406(a), or in the alternative, 28 U.S.C. § 1404(a).  Plaintiff Dara Janosky, on behalf of herself and all others similarly situated, filed a response in opposition (Doc. # 31), Defendant filed its reply (Doc. # 32).  Therefore, the Motion is ripe for review.  For the following reasons, the Motion to Change Venue is **GRANTED.**

## II.     FACTUAL AND PROCEDURAL HISTORY

This action arises out of a benefits plan issued by Defendant.  Defendant, a Delaware corporation with its principal place of business in Dallas, Texas, is a "leading ambulatory surgery platform that owns and operates, at present, 551 medical/surgical facilities in 37 states."  (Doc. # 30 at 7).  Out of those 551 facilities, 108 are located in Texas and none are located in Kentucky.  (*Id*.).  Defendant employs "approximately

16,870 workers" at its medical/surgical facilities and offers those who work full-time health and welfare benefit plans.  (*Id*. at 8).  The plans offered by Defendant are subject to the Employee Retirement Income Security Act of 1974 ("ERISA").  (*Id*.).  The specific plan at issue in this case ("the plan") includes a wellness program "designed to encourage employees to make healthy lifestyle choices."  (*Id*.).  This program includes a "tobacco surcharge" which is a flat monthly surcharge issued against employees who self-identify that they or a family member included on their plan are tobacco users.  (*Id*.).  The surcharge may be removed if the employee participates in a "smoking cessation program[.]"  (*Id*.).  Plaintiff, a previous employee of Defendant, currently resides in Boone County, Kentucky, and lived there during the time she worked for Defendant.  (Doc. # 1 ¶ 12).  Plaintiff was employed by Defendant from August 2019 to around September 2020,[1] where she worked at one of Defendant's Ohio facilities.  (Doc. # 31-1 ¶ 3).  While employed, Plaintiff, a self-identified tobacco user, paid the tobacco surcharge of roughly $50 a month.  (Doc. # 1 ¶ 12).

On May 22, 2025, Plaintiff, on behalf of herself and all others similarly situated, filed a class action complaint against Defendant.  (*See* Doc. # 1).  Plaintiff alleges that the tobacco surcharge is a breach of fiduciary duty under 29 U.S.C. § 1104 and a violation of ERISA's anti-discrimination provision under 29 § U.S.C. 1182.  (*Id*.).  On August 4, 2025, Defendant filed the instant Motion to Transfer Venue pursuant to 28 U.S.C. § 1406(a), or in the alternative, 28 U.S.C. § 1404(a).  (Doc. # 30).

---

[1]    Plaintiff's Declaration states that she was employed from August 2019 to September 2020. (Doc. # 31-1 ¶ 3).  The Declaration of Betsy Harrison, Head of Benefits, Health and Wellness Strategy, Delivery and Leave Administration for Tenet Healthcare, filed by Defendant, states that Plaintiff was employed from August 12, 2019 to August 26, 2020.  (Doc. # 30-1 ¶ 23).

III.    **ANALYSIS**

Defendant moves to transfer this case to the Western District of Texas, Dallas Division pursuant to 28 U.S.C. § 1406(a), on the grounds that none of the ERISA statute's bases for venue have been satisfied.  (Doc. # 30 at 1).  In the alternative, Defendant argues the case should be transferred under 28 U.S.C. § 1404(a) for convenience of the parties and witnesses and in the interest of justice.  (*Id.*).  Plaintiff disagrees, arguing that ERISA's venue provisions have been satisfied, and even if they have not, it is not in the best interest to transfer the case to the Eastern District of Texas.  (Doc. # 31).  Within this Order, the Court will address both statutes.

A.    **Transfer is proper pursuant to 28 U.S.C. § 1406(a)**

Defendant first argues that because the ERISA venue statute has not been satisfied, this Court should transfer the case to the Northern District of Texas pursuant to 28 U.S.C. § 1406(a), which states that the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  (*See* Doc. # 30 at 11).

Pursuant to 28 U.S.C. § 1391(b),

[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

However, this general rule yields to special venue statutes that are "applicable to the federal claims at issue."  *Helder v. Hitachi Power Tools, USA Ltd.*, 764 F. Supp. 93, 94

(E.D. Mich. June 5, 1991).  ERISA includes such a venue provision, codified at 29 U.S.C. § 1132(e)(2), which states that "[w]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."  Courts have interpreted this provision as requiring a plaintiff to satisfy only one of the listed criteria.  *Oakley v. Remy Int'l Inc.*, No. 2:09-0101, 2010 WL 503125, at *3 (M.D. Tenn. Feb. 5, 2010).

Here, Defendant argues that Plaintiff cannot prove venue is proper under any of the listed criteria.  (Doc. # 30 at 11).  Specifically, Defendant alleges that "Plaintiff cannot satisfy her burden because the plans are administered in the Northern District of Texas, USPI does not have minimum contacts with Kentucky, and each of Plaintiff's claimed breaches concerning the design and administration of the plans took place where the plans are administered (in the Northern District of Texas), not where she resides (Kentucky)."  (*Id.*).  Plaintiff disagrees, arguing that transfer is unnecessary "because this is a nationwide class action against a nationwide plan sponsor with 'sufficient minimum contacts' all over the United States, including Kentucky" and therefore "Defendant 'may be found' in this district because the ERISA statute ties venue to personal jurisdiction."  (Doc. # 31 at 2).

### 1.  *Defendant's plan is administered in Texas*

Venue in an ERISA action is proper "where the plan is administered."  29 U.S.C. § 1132(e)(2).  To determine where the plan was administered, courts often look to where the plan administrator is located.  *See Elec. Energy Inc. v. Lambert*, No. 10-2629-STA, 2010 WL 4683533, at *2 (W.D. Tenn. Nov. 12, 2010) (concluding that venue is proper in

4

the Western District of Tennessee because the plan administrator is located in Memphis, and by extension, the plan is administered in Memphis).  Plaintiff does not seem to dispute the conclusion that the plan is administered in Texas.  Certainly, at the time Plaintiff worked for Defendant the plan was administered from Defendant's headquarters in the Northern District of Texas in Addison, Texas.  (Docs. # 30 at 11 and 30-1 ¶ 21).  Today, the plan is administered from Dallas, Texas.  (Doc. # 30 at 12).  Moreover, the insurance companies Defendant partners with to coordinate the plan are also located in Dallas, Texas, as well.  (Doc. # 30-1 ¶ 22).  Therefore, Plaintiff has not satisfied the first basis for venue under ERISA.

### 2.  Where the breach took place

The second basis for establishing venue under ERISA designates that venue is proper in the district "where the breach took place."  29 U.S.C. § 1132(e)(2).  Defendant argues that because Plaintiff is not alleging that her contract rights under the plan were breached, but rather, that the plan itself violates the law, the correct standard is that the breach "occurs not where a plaintiff resides, but where relevant plan decisions were made[.]"  (Doc. # 30 at 13).  Defendant, in support of its position, cites G*arvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, No. 07-886-AS, 2008 WL 410088 (D. Or. Feb. 12, 2008).  There, the District of Oregon held that "[i]f the claim is for breach of contract, the breach occurs where the plaintiff was to receive the benefits due to them under the contract.  On the other hand, if the claim is for breach of a fiduciary duty, the breach occurs where the defendants acted or failed to act in accordance with their duties."  *Garvey*, 2008 WL 410088, at *8 (citing *Cross v. Fleet Reserve Ass'n. Pension Plan*, 383 F. Supp. 2d 852 (D. Md. 2005) and *McFarland v. Yegen*, 699 F. Supp. 10 (D. N.H. 1988)).

Plaintiff, on the other hand, argues that the proper standard is that a breach occurs "where the benefits are received" which, Plaintiff argues, is the Eastern District of Kentucky because it was there, she "saw her paycheck reduced in Kentucky by an unlawful tobacco surcharge." (Doc. # 31 at 5). In support of her argument, Plaintiff cites *Gantt v. Reliance Standard Life Ins. Co.*, which held that "[i]n cases under ERISA, a breach occurs where the benefits are to be received." 646 F. Supp. 3d. 870, 873 (W.D. Ky. Dec. 19, 2022).

The Sixth Circuit has not rendered a decision on this particular question. In the absence of controlling precedent, this Court looks to opinions in other federal circuits. After such a review, the Court is not persuaded by Plaintiff's argument. The Court is mindful that a vast majority of courts have held that for purposes of ERISA, a breach takes place where the benefits are to be received. However, the Court agrees with the reasoning expressed in various district courts that when a plaintiff is not seeking benefits due but, rather, is alleging a breach of fiduciary duty, the correct standard is where the relevant plan decisions were made.

Here, Plaintiff is alleging (1) unlawful imposition of a discriminatory tobacco surcharge in violation of ERISA § 702(b), 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4; and (2) breach of fiduciary duty in violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106. (Doc. # 1 ¶¶ 59-76). As such, because Plaintiff claims only a violation of various federal regulations, the breach occurred where those decisions took place—Dallas, Texas. *See Cross*, 383 F. Supp. 2d at 856 ("[W]hen the plaintiff alleges only a breach of fiduciary duty, rather than make a claim for benefits due, the breach is considered to have occurred where defendants acted or failed to act as their duties required."); *McFarland*, 699 F. Supp. at 13 (finding that "[a] breach of fiduciary duties,

6

however, can occur only where the defendants commit or fail to commit the actions that their duties require."); *Brown v. SunTrust Banks, Inc.*, 66 F. Supp. 3d. 81, 84 (D.D.C. 2014) (for purposes of the ERISA venue provision, breaches of fiduciary duty occurred where the plan was administered).[2]

### 3. Where defendant resides or may be found

The final basis for establishing venue under ERISA lies where the Defendant resides. Defendant argues that this final factor has not been satisfied because Defendant does not reside in Kentucky. Specifically, Defendant contends that it "lacks minimum contacts with the state of Kentucky that would support either general or specific personal jurisdiction." (Doc. # 30 at 14). In response, Plaintiff argues that Defendant maintains sufficient contacts with the Commonwealth. (Doc. # 31 at 2).

For ERISA venue purposes, a defendant resides "in any district in which its 'minimum contacts' would support the exercise of personal jurisdiction." *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 646 (6th Cir. 2006) (quoting *Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 809-10 (7th Cir. 2002) and *Varsic v. United States District Court*, 607 F.2d 248-49 (9th Cir. 1979)). "The minimum contacts standard, in turn, is satisfied when the 'defendant's contacts with the forum state are substantial and continuous and systematic,' so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state." *Id*. Thus, "a corporation must

---

[2]    The Court notes that cases which have applied the "where benefits are received" standard do not necessarily contradict this conclusion. For example, in *Keating v. Whitmore Mfg. Co.*, the Eastern District of Pennsylvania noted that because ERISA benefits plans are, in a sense, contracts, it is logical the court follow the rules of contract law when deciding where an ERISA breach takes place "at[] least when the plaintiff is suing for benefits due under the terms of the plan." 981 F. Supp. 890, 893 (1997). Here, Plaintiff has not sued for benefits due, alleging only claims for discrimination and breach of fiduciary duty, meaning this is not a breach of contract claim as the *Keating* court, and others, have analogized the ERISA cases before them to be.

7

be subject to either the specific or general jurisdiction of the forum for venue to be proper under ERISA." *Walton v. Guardian Life Insurance Company of America*, No. 2:23-cv-1693, 2024 WL 47700, at *2 (S.D. Oh. Jan. 4, 2024).

"'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as home.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction. *Id*. (internal quotations omitted). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id*. Only in an "exceptional case" might a different forum have general jurisdiction over a defendant. *Id*. at 138 n.19. Defendant is incorporated under Delaware law and has its principal place of business in Dallas, Texas. (Doc. # 30 at 7). Therefore, Kentucky courts do not have general jurisdiction over Defendant.

Neither is Defendant subject to specific jurisdiction in Kentucky. To satisfy the Due Process Clause of the Fourteenth Amendment, a non-resident of a state "generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)). "The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Id*. (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "[I]t

is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 286. "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. Plaintiff contends Defendant has sufficient minimum contacts with Kentucky for five reasons:

> (1) Defendant's drop-down menu allows physician partners from Kentucky to request a connection; (2) Defendant operates at least five (5) surgical centers on the border of Kentucky, in Indiana; (3) Defendant has a variety of health system partners which are "readily accessible to Kentucky patients and workers"; (4) Plaintiff believes Defendant treats patients from Kentucky in their Indiana surgical centers and employs Kentucky residents who are plan participants; and (5) "dozens of putative class members reside in Kentucky[.]"

(Doc. # 31 at 4-5).

These facts, separately and in the aggregate, are simply insufficient to establish minimum contacts. To satisfy specific jurisdiction, the relationship must arise out of contacts that the "defendant himself" creates with the forum state. *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Supreme Court has consistently rejected attempts to satisfy the minimum contacts standard via the "unilateral activity of another party or third person." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Such a consideration is not appropriate "when determining whether a defendant has sufficient contacts with a forum State." *Id*. Moreover, the minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. To be sure, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. The facts proposed by Plaintiff do not meet this well-established standard. Certainly, the fact that Defendant operates surgical centers in *bordering* states, such that physicians located in Indiana are

9

accessible to patients in Kentucky is the exact type of unilateral activity by another party the Supreme Court has rejected.  Similarly, that there may be "dozens" of class members who reside in Kentucky that travel out of state to work in Defendant's facilities (not located in Kentucky), is not only wholly speculative, but again an insufficient basis for jurisdiction. Plaintiff, or the alleged class of plaintiffs, "cannot be the only link between the defendant and the forum."  *Id*.  Therefore, Defendant neither "resides" nor "may be found" in Kentucky within the meaning of 29 U.S.C. § 1132(e)(2).  Accordingly, because none of the ERISA statute's bases for venue have been satisfied, transfer pursuant to 28 U.S.C. § 1406(a) is warranted.

### B.    Transfer is proper pursuant to 28 U.S.C. 1404(a)

In the event the Court found venue appropriate under the ERISA venue provisions, Defendant argues the case should nevertheless be transferred to the Northern District of Texas under 28 U.S.C. § 1404(a) "for the convenience of parties and witnesses and in the interest of justice because the balance of relevant factors strongly favors having this dispute in the Northern District of Texas."  (Doc. # 30 at 9).  Plaintiff disagrees, arguing that a transfer is not in the best interest of the parties.  (Doc. # 31 at 6).  While the Court has concluded that transfer is proper pursuant to 28 U.S.C. § 1406(a), the Court will nevertheless address whether transfer is also warranted under 28 U.S.C. § 1404(a).

Title 28 U.S.C. § 1404(a) allows a court "[f]or the convenience of parties and witnesses, in the interests of justice . . . [to] transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  In determining whether to transfer a case, courts must consider both private interests, such as the inconvenience to witnesses and parties, alongside public

interests, including the fairness of the judicial system. *See Moses v. Bus. Card. Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). In weighing these considerations, courts in this District employ the following nine factors in determining whether to transfer venue under § 1404(a):

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.[3]

*Conrad v. Transit Auth. of N. Ky.,* No. 19-23-DLB-CJS, 2019 WL 6829952, at *2 (E.D. Ky. Dec. 13, 2019) (citing *Cowden v. Parker Assocs., Inc.*, No. 5:09-cv-323-KKC, 2010 WL 715850, at *2 (E.D. Ky. Feb. 22, 2010)); *see also Bell v. Jefferson*, No. 5:18-CV-032-CHB, 2019 WL 4017241, at *8 (E.D. Ky. Aug. 26, 2019); *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc*. No. 5:12-314, 2013 WL 1187009, at * 3 (E.D. Ky. Mar. 20, 2013).[4] Section 1404(a) places "discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see also Reese v. CNH Am. LLC*, 574 F.3d 315, 320

---

[3] The initial step under § 1404(a) is to determine whether the case could have been brought in the transferee venue. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). Under the general venue statute, venue is proper in a district where "any defendant resides." 28 U.S.C. § 1391(b)(1). Similarly, the venue statute governing ERISA cases provides that venue is proper where a defendant "resides" or "may be found." 29 U.S.C. § 1132(e)(2). As previously determined (*Supra* III(A)(3)), Defendant resides in the Northern District of Texas. Therefore, venue would be proper in the Northern District of Texas.

[4] The actual factors used in this test vary from court to court. *See Conrad*, 2019 WL 6829952, at *2 n.1. However, "all of these various factors are 'substantially the same,' and the nine-factor test appears favored by the Eastern District of Kentucky." *Antony v. Buena Vista Books, Inc.*, No. 18-205-DLB-CJS, 2020 WL 5995590, at *9 n.3 (E.D. Ky. Oct. 1, 2020) (quoting *Conrad*, 2019 WL 6829952, at *2 n.1)

(6th Cir. 2009) ("As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate.").

The moving party carries the burden of showing that the nine factors strongly support transfer, *Conrad*, 2019 WL 6829952, at *3, because § 1404(a) "provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Barrack*, 376 U.S. at 645-46.   Accordingly, a motion to transfer cannot be used to transfer the inconvenience from the defendant to the plaintiff.  *Conrad*, 2019 WL 6829952, at *3.

### 1.  The Convenience of Witnesses

Defendant contends that all material witnesses, other than Plaintiff herself, will be located in Texas.  (Doc. # 30 at 17).  These witnesses include: (1) Defendant's employees who administer, organize, or otherwise operate the health plan and work out of Defendant's Dallas headquarters; (2) Cigna and BCBS, the entities who handled Plaintiff's enrollment in the tobacco cessation program, both of which are based in Texas; and (3) the Dallas-based non-party insurance brokers Defendant coordinates with regarding benefit coverage options.  (*Id*. at 18).  Additionally, Defendant asserts that while, at this stage, it is unclear who will make up Plaintiff's class, with nearly 20% of Defendant's facilities being located in the state of Texas, 28 of which are located in the Northern District of Texas, Defendant argues it is "far more . . . likely [the class members will] have a connection to the Northern District of Texas than this District."  (*Id*.).  Plaintiff did not address this factor in her Response.

"The convenience of witnesses acts as 'one of the most important factors' in deciding whether to transfer under § 1404(a)." *Conrad*, 2019 WL 6829952, at \*3 (quoting *Valvoline Instant Oil Change Franchising, Inc. v. RFG Oil, Inc.*, No. 12-cv-39-KSF, 2012 WL 3613300, at \*7 (E.D. Ky. Aug. 22, 2012)). In particular, "[c]onvenience of *non-party* witnesses, as opposed to employee witnesses, is one of the most important factors in the transfer analysis." *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, No. 5:12-cv-314, 2013 WL 1187009, at \*4 (E.D. Ky. Mar. 20, 2013) (quoting in a parenthetical *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 963 (M.D. Tenn. 2008)). However, courts do not treat the convenience of witnesses as a "numbers game," but instead "evaluate the significance of their expected testimony." *OnX USA LLC v. Sciacchetano*, No. 1:11-cv-2523, 2013 WL 821286, at \*3 (N.D. Ohio Mar. 4, 2013) (quoting *Siegfried v. Takeda Pharm. N. Am., Inc.,* No. 1:10-cv-2713, 2011 WL 1430333, at \*3 (N.D. Ohio Apr. 14, 2011)).

Defendant has shown that most material witnesses reside in the Dallas area. Certainly, the non-party witnesses, which is one of the most important factors this Court must consider, all reside in Texas. (Doc. # 30-1 ¶¶ 18-22). Additionally, any employee witness who administers the health plan resides in the greater Dallas area, where Defendant is headquartered. (*Id*. ¶ 5). Finally, any class member who may be a witness in this case is more likely to reside in Dallas as opposed to Kentucky, given that 108 of Defendant's facilities and 7,386 employees are located in Texas, while there are no facilities at all located in the Commonwealth. (*Id*. ¶¶ 3, 28-29).

The Court is mindful that this factor is not simply a "numbers game." *OnX USA LLC,* 2013 WL 821286, at \*3 (quoting *Siegfried*, 2011 WL 1430333, at \*3). Given the

nature of this action—that the plan itself violates federal regulations—testimony of those who administer the plan, enroll class members in the plan, and third-party brokers who coordinate the benefit coverage options will be crucial.  Plaintiff does not seem to contest such a conclusion.  Therefore, this factor weighs in favor of transfer.

### 2. Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Defendant next argues that any relevant documents or sources of proof will be located at its headquarters in Dallas, Texas, where Defendant "administers the plans [] and maintains plan records at its headquarters."  (Doc. # 30 at 19).  Additionally, Defendant argues that any documents that may be in Plaintiff's possession would be a "de minimis part of the overall sources of proof in this putative nationwide class action." (*Id*.).  Plaintiff's Response does not address or identify any potential documents or sources of proof that are likely to be located in Kentucky.  (*See* Doc. # 31).  The entirety of Plaintiff's response is that "most of the written discovery that occurs prior to class certification will be conducted electronically and remain unaffected by Defendant's geographic location."  (*Id*. at 2).

While the ease of electronic transfer has lowered the weight given to considerations of locations of sources of proof, it has not eradicated it entirely.  *See Baer v. King*, No. 13-cv-150-DLB-JGW, 2013 WL 6528837, at *4 (E.D. Ky. Dec. 12, 2013) ("While advances in technology would facilitate the discovery process, producing these records and providing them to a Kentucky plaintiff could still be burdensome and time-consuming.").  Courts in this circuit have generally concluded that the burden of transferring documents electronically is minimal.  *See Conrad*, 2019 WL 6829952, at *4

(giving no weight to the location of documentary evidence because such evidence could be transmitted electronically).

Defendant is correct when it argues that any evidence, while likely stored electronically, would be housed at the headquarters in Dallas, Texas.[5]  However, while this court in *Baer* did say that producing electronic documents could be burdensome and time-consuming, it goes on to weigh that factor only "slightly in favor" of the defendant. *Baer*, 2013 WL 6528837, at *4.  Therefore, this factor weighs slightly in favor of transfer.

### 3.  The Convenience of the Parties

Defendant contends that its employees who administer the plan, non-party witnesses, and various potential class members reside in Texas and therefore it would be more convenient to litigate in the Northern District of Texas.  (Doc. # 30 at 20).  Plaintiff did not address this factor in her Response.  (Doc. # 31).  However, she conclusively states that there are "dozens" of putative class members who live in Kentucky.  (*Id.* at 5).

When considering the convenience-of-the-parties factor, the Court examines the degree of contact the parties have with the forum.  *See Valvoline,* 2012 WL 3613300, at *7.  Additionally, "[c]ourts often consider the physical distance between the two forums (and two courthouses) when assessing how burdensome it would be for each party to travel to the chosen or proposed forum."  *Conrad*, 2019 WL 6829952, at * 4.  Finally, "when assessing this factor, courts do not allow transfer of a case in a situation where it

---

[5]     While location of evidence is "often irrelevant in ERISA suits" such factors "may become relevant . . . where it appears the plaintiff plans to assert claims and seek relief beyond the traditional ERISA 502(a)(1)(B) claim for benefits."  *Hilbert v. Lincoln Nat. Life Ins. Co.,* No. 3:14-cv-565-JGH 2015 WL 1034058, at *2 (W.D. Ky. Mar. 9, 2015).  Because Plaintiff is not asserting a claim for benefits, but is arguing the plan itself violates federal regulations, any necessary documents, such as the plan itself, would be housed electronically in Dallas.

would shift the inconvenience from the defendant to the plaintiff." *Id*. (citing *Cowden*, 2010 WL 715850, at *2).

Here, Plaintiff's claim that "dozens" of putative class members live in Kentucky is speculative at best. Out of the 551 facilities Defendant operates, 108 of them are located in Texas, while none are located in Kentucky. Moreover, 7,386 of Defendant's employees are residents of Texas. Neither Plaintiff nor Defendant has offered any conclusive evidence that, outside of Plaintiff, there are other employees of Defendant who currently reside in Kentucky. Certainly, Plaintiff has offered no support for her allegation that "dozens" of potential class members live in Kentucky, outside of the fact that Defendant operates facilities in the bordering states of Ohio and Indiana. Thus, even if there are "dozens" of potential class members that reside in Kentucky, that number is significantly outweighed by the thousands of employees who live in Texas, some of which, are likely to be putative class members.[6]

When considering this factor, courts also examine how convenient the chosen forum is for the plaintiffs and defendants. The Court acknowledges that Defendant is a sophisticated corporation, and that Plaintiff has attested that the transfer would financially burden her. But, "we must keep in mind that in the context of a class action lawsuit, [the defendant] additionally may have to spend significant resources travelling to the individual locations of all potential plaintiffs spread across the country." *Keesler v. Tractor Supply Co.*, No. 3:24-cv-01612, 2025 WL 1770503, at *4 (M.D. Pa. June 26, 2025). Here, both the Defendant, as well as a significant number of employees likely to be members of the

---

[6]    Significantly, the Court in *Cowden* found this factor to not favor transfer on the grounds that if the class was certified, there was no indication that "a majority of potential class members" lived in the transferee venue. That is not the case here. 2010 WL 715850, at *4.

putative class, reside in the Northern District of Texas.  Dallas is home to two major international airports that operate as hubs for large commercial airlines.  Cincinnati & Northern Kentucky International Airport, while a large airport, is smaller and offers far fewer direct flights than Dallas.  "Therefore, while [Defendant's] financials allow it to lessen the inconvenience of travel generally, we find that the overall complications of travel in this specific case make [the Northern District of Texas] more convenient for all potential parties" than the Eastern District of Kentucky.  *See id*.  For these reasons, the Court finds this factor neutral.

### 4. The Locus of Operative Facts

Defendant asserts that Texas is "where USPI made decisions related to the plans, their benefit offerings, and their administration."  (Doc. # 30 at 20).  Defendant contends the operative facts in this case "are centered 'where the Plan at the heart of the alleged ERISA violation is administered and operated' since 'the discussions and formulation of the Plan presumably occurred' in that location."  (*Id*. (quoting *Keesler,* 2025 WL 1770503, at *4).  Plaintiff does not offer an argument in response.

In determining the locus of operative facts, courts look to the "'primary events which gave rise to the [alleged wrongs].'"  *See Gunter v. Bemis Co.*, No. 3:15-cv-746, 2016 WL 11248523, at *5 (M.D. Tenn. Apr. 20, 2016) (quoting *Nollner v. S. Baptist Convention, Inc.*, No. 3:14-cv-1065, 2014 WL 3749522, at *8 (M.D. Tenn. July 30, 2014)).  Defendant points this Court in the direction of *Keesler* to determine the weight afforded to this factor.  In *Keesler*, the plaintiff brought a class action lawsuit against her previous employer.  2025 WL 1770503, at *1.  The plaintiff claimed that the defendant's health plan required tobacco users to pay a tobacco surcharge fee.  *Id*.  Users could avoid these

surcharges by participating in a tobacco cessation program. *Id*. The plaintiff filed suit in the Middle District of Pennsylvania on behalf of herself and all others similarly situated, alleging that the surcharge violated ERISA's anti-discrimination lawsuit. *Id*. The defendant moved to transfer the case to the Middle District of Tennessee, where it was headquartered. *Id*. at *2. In analyzing the various factors under 28 U.S.C. § 1404(a), the court noted that while the plaintiff was a citizen of Pennsylvania and worked for defendant in the Middle District of Pennsylvania, "it appear[ed] that the majority of the operative facts occurred in the Middle District of Tennessee." *Id*. at *4. The Court elaborated on this conclusion, stating that "the Plan at the heart of the alleged ERISA violation is administered and operated by Tractor Supply from its headquarters in Tennessee . . . and any evidence regarding the discussions and formulation of the Plan presumably occurred in Tennessee." *Id*.

This case resembles *Keesler*. Plaintiff has filed a class action suit against Defendant over an alleged unlawful tobacco surcharge, asserting that it violates ERISA's anti-discrimination statute. (*See* Doc. # 1). Plaintiff sued in the Eastern District of Kentucky, where she resides. However, unlike the plaintiff in *Keesler*, Plaintiff did not work for Defendant in the Eastern District of Kentucky. In fact, she could not have physically worked for Defendant in Kentucky, given that Defendant operates no facilities in the Commonwealth. While Plaintiff argues that she felt the harm in Kentucky when the tobacco surcharge was taken out of her paycheck each month, this Court agrees with the *Keesler* court's reasoning that the locus of the operative facts did not occur in the Eastern District of Kentucky. Given that Plaintiff's allegations rest on the basis that the plan itself violates federal regulations, the operative facts—the plan as a whole—occurred

18

in the Northern District of Texas where the plan is administered.  Any evidence regarding discussions with the employees who administer the plan or the non-party witnesses, such as the third-party brokers or the entities who handle enrollment, took place in Texas. Accordingly, this factor favors transfer.

### 5. *The Availability of Process to Compel the Attendance of Unwilling Witnesses*

Defendant argues that the non-party witnesses, such as the Dallas-based insurance brokers, and employees of Cigna and BCBS, "are far more likely to reside, be employed, or regularly transact business within subpoena power of a court in the Northern District of Texas."  (Doc. # 30 at 21).  Plaintiff does not offer a response.

"The residence of non-party witnesses [] is very important, as their attendance must often be compelled."  *Valvoline*, 2012 WL 3613300, at *11.  "A subpoena may command a person to attend a trial . . . [if the court issuing the subpoena is] within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1).  "When both forums have the ability or inability to compel witnesses, courts have deemed this factor neutral."  *Conrad*, 2019 WL 6829952, at *5.  Video depositions are not a substitute for live testimony.  *See Valvoline,* 2012 WL 3613300, at *9.  This Court would not be able to compel the non-party witnesses who reside in Texas.  Moreover, not only has Plaintiff not pointed this Court in the direction of any non-party witnesses who reside in Kentucky, but Plaintiff has not even contested that the non-party witnesses identified by Defendant would not be subject to subpoena by this Court.  Therefore, because this Court would be unable to compel many vital witnesses, this factor weighs in favor of transfer.

### 6. The Relative Means of the Parties

Plaintiff alleges a "significant financial disparity between the parties" and argues that litigating in Texas would "create significant hardships" for her, because it would "disrupt her job and family life, and she cannot afford the costs associated with flights and accommodations that would come with having this case transferred to Texas." (Doc. # 31 at 7). Defendant argues that because this is a putative national class action, "an individual plaintiff's means are not given significant weight compared to the convenience of the class as a whole." (Doc. # 30 at 21).

The Sixth Circuit, and districts within the circuit, have offered no guidance on the proper analysis for this factor when the case involves a putative class action. Therefore, the Court turns to other district courts for direction, which seem to be split on the weight to accord this factor. Some courts have found the factor to be neutral. *See Shiloah v. GEICO Indem. Co*., No. 6:23-cv-06211, 2025 WL 2314763, at *5 (W.D.N.Y. Aug. 12, 2025) ("Because Plaintiff seeks to represent hundreds, if not thousands, of individuals holding benefit plans with Defendant, the relative means of the parties do not favor or disfavor transfer. In this case, Defendant is a sophisticated company with the apparent means to litigate this case in this District. Therefore, the Court determines this factor is neutral."); *Passmore v. Vertex Energy, Inc*., No. 1:23-cv-128-TFM-N, 2024 WL 266531, at *9 (S.D. Tex. Jan. 24, 2024) (finding the factor neutral because the case involved a putative class action and therefore was not "a traditional individual plaintiff versus the corporation in a hypothetical 'David v. Goliath' analogy."). While others find the factor to tip very slightly in favor of the plaintiff. *See Fritz v. Realpage, Inc*., No. 20-cv-7055-CJS-MJP, 2021 WL 3700434, at *5 (W.D.N.Y. Aug. 20, 2021) ("Defendant is a multimillion-

dollar company that readily has the means to litigate this case in this District and would have a significant financial advantage over any individual plaintiff, or class of plaintiffs in this context[.]"); *Abreu v. Pfizer, Inc.*, No. 21-62122-CIV-MORENO, 2022 WL 481184, at *12 (S.D. Fla. Feb. 16, 2022) ("Pfizer is a multinational corporation with vast resources and Plaintiff, even when acting as a class representative, is certain to have less resources available to him."). All, however, seem to agree that the relative means of the parties is "somewhat mitigated" when the "case has been brought as a proposed nationwide class action." *Huntley v. Sprout Foods, Inc.*, No. 3:21-00488, 2022 WL 138015, at *4 (D. Conn. Jan. 14, 2022).

Here, the Court agrees with the sentiment expressed by those courts which found this factor to slightly favor Plaintiff. In this case, Defendant is a sophisticated company, identifying itself as the leading ambulatory surgery platform in the United States. (*See* Doc. # 30 at 1). Moreover, Defendant does not seem to dispute that it likely has the means to litigate in this Court. Even when Plaintiff's means are mitigated due to the case being brought as a proposed nationwide class action, Defendant is still likely to have a significant financial advantage over any plaintiff, or class of plaintiffs. Therefore, the Court gives this factor very minimal weight, finding that it "tips only slightly in [Plaintiff's] favor." *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 274 (D. Conn. Dec. 1, 2006).

### 7. The Forum's Familiarity with the Governing Law

Defendant argues that this factor is neutral given that no state claims are at issue and therefore both the Eastern District of Kentucky and the Northern District of Texas are equally familiar with federal law. (Doc. # 30 at 21). Plaintiff disagrees, arguing that a district court within the Sixth Circuit is better suited to hear this case because district

courts within the Sixth Circuit have addressed the issue of the ERISA "nicotine surcharge" wellness program, while no district court in the Fifth Circuit has done so.  (Doc. # 31 at 6).  Plaintiff argues that "forcing a Texas court to start from scratch serves no one's interest, least of all judicial economy."  (*Id*. at 7).

Plaintiff's argument is unconvincing.  Plaintiff has only alleged claims under various federal statutes.  As such, "all federal courts are presumed to be equally familiar with federal law."  *Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Representative*, 161 F. Supp. 3d 199, 229 (S.D.N.Y. Nov. 13, 2015).  Accordingly, the Court finds this factor neutral.  *See Paulson v. Guardian Life Ins. Co. of Am.*, 614 F. Supp. 3d 1, at *10 (S.D.N.Y. Jul. 12, 2022) (finding the factor neutral despite the fact that the plaintiff argued the transferor district had greater familiarity with ERISA than the transferee district); *Williams v. Unum Life Ins. Co. of Am.*, No. 24-cv-24113-RAR, 2025 WL 1591213, at *2 (S.D. Fla. June 5, 2025) ("Familiarity with governing law is also not a concern in an ERISA case because all federal courts are equally competent to decide issues of federal law."); *Alexandra H. v. Oxford Health Insurance, Inc.*, No. 11-23948, 2012 WL 13080210, at *8 (S.D. Fla. Mar. 12, 2012) ("[T]his is an ERISA-based action founded on federal law. As such, New York and Florida [federal courts] are equally familiar with the pertinent law.").[7]  This factor is neutral.

---

[7]    Additionally, the case cited to by Plaintiff is a Southern District of Ohio case.  *See Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-cv-541, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021).  While persuasive, this case is not binding authority on this Court.  Both this Court and a court located in the Northern District of Texas are equally capable of analyzing persuasive, non-binding case law from other district courts.

### 8. The Weight Accorded to Plaintiff's Choice of Forum

Defendant argues that Plaintiff's choice of forum is entitled to little deference on the grounds that "her residence is the only connection to the forum, few if any potential class members likely reside in the District, all other relevant party and non-party witnesses reside outside the district, and the bulk of the operative facts occurred in the Northern District of Texas." (Doc. # 30 at 22). Plaintiff does not offer a response.

While traditionally, a "plaintiff's choice of forum should rarely be disturbed" *Reese*, 574 F.3d at 320, in cases concerning class action lawsuits, a plaintiff's choice of forum is considerably weakened. *See Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("But where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."). Here, Plaintiff is currently the only identified class member who resides in Kentucky, the alleged events relevant to the case took place in Texas, "and this is a putative class action in which the named plaintiffs seek to represent a national class of persons or sub-classes of persons across states that do not include [Kentucky]." *Sacklow v. Sacks Inc.*, 377 F. Supp. 3d 870, 878 (M.D. Tenn. May 6, 2019). Furthermore, Defendant operates no facilities in Kentucky, "making it likely that extremely few putative class members would even reside in [Kentucky]." *Id*. The choice of the Eastern District of Kentucky as the forum for this litigation is therefore entitled to less weight than in usual circumstances. As such, the Court finds this factor neutral.

### 9.  Trial Efficiency and the Interests of Justice

Defendant contends that "[c]onsidering the totality of the circumstances, litigating this case in Dallas, Texas, would be more efficient than litigating it in this District and would advance the interests of justice."  (Doc. # 31 at 22).  Defendant further argues that Plaintiff will not suffer prejudice or undue delay due to transfer and there is "no basis to believe that the courts in the Northern District of Texas would be unable to promptly and efficiently resole this case."  (*Id*.).  Defendant asserts that courts in the Northern District handle ERISA actions in slightly less time than courts in this District.  (*Id*.).  Defendant cites statistics showing that 61% of all outcomes for ERISA actions happen between 56 and 286 days after filing, while in the Eastern District of Kentucky, 60% of all outcomes for ERISA actions happen between 82 and 307 days after filing.  Plaintiff offers no response.  (*Id*. at 23 n. 6).

"In examining the interests of justice, courts [] look to the public's interest in having a local controversy adjudicated locally.  When both states maintain an interest in the case, the Court is not required to transfer the case."  *Conrad*, 2019 WL 6829952, at *7 (internal citation omitted).  Here, the extent that Kentucky has an interest in litigating this case is that Plaintiff resides in the Commonwealth and Kentucky "has an interest in protecting the rights of its citizens[.]"  *Cowden*, 2010 WL 715850, at *4.  However, Texas seems to have a stronger interest, given that it is home to Defendant's residence, numerous potential class members' residences, and the operative facts and evidence.  *See Keesler*, 2025 WL 1770503, at *6 ("[i]n a potentially complex collective action such as this[,] a strong public interest exists in having the lawsuit heard in the district at the 'center of gravity' of

the dispute." (quoting *Stevens v. USA Today Sports Media Group, LLC*, No. 1:23-cv-1367, 2024 WL 1285535, at *5 (M.D. Penn. Mar. 26, 2024))).

Courts also consider trial efficiency when deciding a motion to transfer by examining evidence of docket congestion and possible speed of resolution. *See id.*; *McIntosh v. E-backgroundchecks.com, Inc.,* No. 5:12-310-DCR, 2013 WL 954281, *5 (E.D. Ky. Mar. 11, 2013). Defendant's evidence of trial congestion, which shows a month differential between resolution of an ERISA case in Kentucky and resolution of a case in the Northern District of Texas, does not show a "substantial difference in disposition times" to merit weight in the transfer analysis. *See id.* (rejecting the contention that a six-month difference in time from filing to trial weighs in favor of transfer).

At such an early stage of litigation, there is no significant delay or prejudice to warrant denying Defendant's Motion. In fact, in the interest of efficiency, the Northern District of Texas prevents possible delays in the future, given the availability of witnesses, counsel, and parties, including putative class members. Moreover, Texas has a strong public interest in the case, and such burden of litigation should fall on the district having the most direct connection with the claims. *See Stevens*, 2024 WL 1285535, at *5. The small chance of delay or prejudice weighs in favor of transfer.

### 10. Weighing the Factors

The convenience of witness, location of documents, locus of operative facts, availability to compel witnesses, and trial efficiency weigh in favor of Defendant. The relative means of the parties weighs slightly in favor of Plaintiff. The remaining factors are neutral. In sum, the relevant factors to be considered weigh heavily in favor of transferring this case to the Northern District of Texas, notwithstanding the deference

given to Plaintiff's means.  The only apparent connection between this case and Plaintiff's causes of action is the happenstance that Plaintiff chose to live in Kentucky while working for Defendant in Ohio.  Defendant has properly demonstrated that the factors weigh in its favor, satisfying its burden pursuant to § 1404(a).

IV.    **CONCLUSION**

For the reasons discussed herein,

**IT IS ORDERED** that Defendant's Motion to Change Venue (Doc. # 30) is **GRANTED.**  This matter shall be **TRANSFERRED to the Northern District of Texas, Dallas Division.**

This 29th day of October, 2025.



Signed By:

*David L. Bunning*

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2025\25-68 MOO re mtn to transfer.docx

26