**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| LISA MUELLER and DARA JANOSKY, on behalf of themselves and all others similarly situated,<br><br>                 Plaintiffs,<br><br>      v.<br><br>UNITED SURGICAL PARTNERS INTERNATIONAL, INC.,<br><br>                 Defendant. | Civil Action No. 3:25-cv-02934-S<br><br>Honorable Karen Gren Scholer |

**USPI'S MOTION TO DISMISS FOR LACK OF STANDING UNDER
FEDERAL RULE 12(b)(1) AND FOR FAILURE TO STATE A CLAIM
UNDER FEDERAL RULE 12(b)(6) AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     BACKGROUND ...................................................................................................... 2

III.    LEGAL STANDARD................................................................................................ 4

IV.     ARGUMENT ........................................................................................................... 6

        A.      Plaintiffs Lack Standing to Bring Any of Their Claims. ...................................... 6

                1.      Plaintiffs Lack Article III Standing for All Claims Because They Plead No
                        Particularized Injury That Is Fairly Traceable to Defendant's Conduct. ..... 6

                2.      Plaintiffs Fail to Allege a Cognizable Loss to the Plan (Count III). ............ 9

                3.      Plaintiffs Lack Article III Standing to Bring Claims for Prospective
                        Declaratory and Injunctive Relief. .............................................................10

        B.      Plaintiffs' Claims That USPI's Plan Did Not Comply With Statutory and
                Regulatory Requirements Should Be Dismissed Under Rule 12(b)(6). .............. 11

                1.      Tobacco Use Is Not a Health Status-Related Factor Under 29 U.S.C.
                        § 1182. .....................................................................................................11

                2.      Count I Fails to State a Claim Regarding the "Full Reward" Requirement.
                        ...................................................................................................................13

                3.      Count II Fails to State a Claim That USPI Did Not Provide Sufficient
                        Notice. .......................................................................................................16

                4.      Plaintiffs Fail to State a Claim Regarding Dependents' Conduct. ..............19

        C.      Plaintiffs' Fiduciary Duty Claims Should Be Dismissed Under Rule 12(b)(6). . 20

                1.      USPI's Actions Are Not Fiduciary Decisions. ...........................................20

                2.      Plaintiffs Fail to Allege with Particularity That USPI Mismanaged Plan
                        Assets.........................................................................................................22

                3.      Counts III and IV Should Be Dismissed as Duplicative of Counts I and II.
                        ...................................................................................................................23

V.      CONCLUSION...................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnett v. Aetna Life Ins. Co.*,
2016 WL 6883203 (S.D. Tex. Apr. 14, 2016) ...........................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................................5

*Auer v. Robbins*,
519 U.S. 452 (1997)....................................................................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................................5

*Blanco v. Samuel*,
91 F.4th 1061 (11th Cir. 2024) ..................................................................................................19

*Bokma v. Performance Food Group, Inc.*,
783 F. Supp. 3d 882 (E.D. Va. 2025) .........................................................................................15

*Burgess v. U.S.*,
553 U.S. 124 (2008)....................................................................................................................12

*Campaign Legal Center v. Scott*,
49 F.4th 931 (5th Cir. 2022) .........................................................................................................8

*Christiana Tr. v. Riddle*,
911 F.3d 799 (5th Cir. 2018) ......................................................................................................15

*Curtiss–Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995)......................................................................................................................21

*Dep't of Educ. v. Brown*,
600 U.S. 551 (2023)......................................................................................................................6

*Gonzales v. Or.*,
546 U.S. 243 (2006)....................................................................................................................14

*Guenther v. BP Ret. Accumulation Plan*,
2017 WL 6611634 (S.D. Tex. Feb. 17, 2017) .........................................................................6, 8

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
530 U.S. 238 (2000)....................................................................................................................22

*Hollingshead v. Aetna Health Inc.*,
589 F. App'x 732 (5th Cir. 2014) ..........................................................................................23, 24

*In re: Idearc Erisa Litig.*,
2016 WL 7189980 (N.D. Tex. Feb. 26, 2016)............................................................................22

ii

*Locascio v. Fluor Corp.*,
  2023 WL 320000 (N.D. Tex. Jan. 18, 2023) ...........................................................................7, 8

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996)......................................................................................................21, 22

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024).......................................................................................................2, 13

*Martinez v. Schlumberger, Ltd.*,
  338 F.3d 407 (5th Cir. 2003) ...............................................................................................21

*Mehlberg v. Compass Grp. USA, Inc.*,
  2025 WL 1260700 (W.D. Mo. Apr. 15, 2025) ........................................................................15

*Moore v. Bryant*,
  853 F.3d 245 (5th Cir. 2017) .................................................................................................4

*Paul Wilson et al. v. Whole Food Market, Inc. et al.*,
  Case No. 1:25-cv-00085 (W.D. Tex. Jan. 20, 2026) ...............................................................15

*Ramming v. U.S.*,
  281 F.3d 158 (5th Cir. 2001) ................................................................................................4

*Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*,
  960 F.3d 190 (5th Cir. 2020) ....................................................................................5, 14, 23

*Singh v. RadioShack Corp.*,
  882 F.3d 137 (5th Cir. 2018) ..............................................................................................22

*Soc. of Separationists, Inc. v. Herman*,
  959 F.2d 1283 (5th Cir. 1992) ........................................................................................10, 11

*Swenson v. United of Omaha Life Ins. Co.*,
  876 F.3d 809 (5th Cir. 2017) ..............................................................................................23

*Tex. Gen. Hosp., L.P. v. United Healthcare Servs. Inc.*,
  2016 WL 3541828 (N.D. Tex. June 28, 2016) .........................................................................5

*Tex. v. U.S. Dep't of Health & Hum. Servs.*,
  770 F. Supp. 3d 940 (E.D. Tex. 2025)...................................................................................19

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020)...................................................................................................6, 8, 9

*Tolson v. Avondale Indus., Inc.*,
  141 F.3d 604 (5th Cir. 1998) ...............................................................................................24

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)............................................................................................................5

*Vuyanich v. Republic Nat. Bank of Dallas*,
  723 F.2d 1195 (5th Cir. 1984) ...............................................................................................4

*Wagner v. Hess Corp.*,
 2025 WL 888428 (N.D. Tex. Mar. 21, 2025) ..........................................................................11

*Williams v. Bally's Mgmt. Grp., LLC*,
 2025 WL 3078747 (D.R.I. Nov. 4, 2025) .......................................................2, 9, 10, 15, 18, 19

*Williamson v. Tucker*,
 645 F.2d 404 (5th Cir. 1981) ..................................................................................................5

**Statutes**

29 U.S.C. § 1104 ...............................................................................................................................9

29 U.S.C. § 1106 ...............................................................................................................................9

29 U.S.C. § 1106(a)(1) ....................................................................................................................22

29 U.S.C. § 1109 ...............................................................................................................................9

29 U.S.C. § 1132(a)(2) ......................................................................................................................9

29 U.S.C. § 1132(a)(3) ............................................................................................................4, 6, 23

29 U.S.C. § 1182(b)(1) ...............................................................................................................12, 20

29 U.S.C. § 1182(b)(2)(B) .................................................................................................................6

29 U.S.C. § 1191b(d)(2) ..................................................................................................................12

42 U.S.C. § 300gg-4(j)(3)(D) .................................................................................................2, 14, 16

42 U.S.C. § 300gg-4(j)(3)(E) ..................................................................................................2, 16, 18

ERISA § 502(a)(2) .........................................................................................................................4, 9

ERISA § 502(a)(3) .............................................................................................................................4

**Regulations**

29 C.F.R. § 2590.702(c)(1) ..............................................................................................................20

29 C.F.R. § 2590.702(f)(4)(ii) ......................................................................................................2, 20

29 C.F.R. § 2590.702(f)(4)(iv) ........................................................................................................14

29 C.F.R. § 2590.702(f)(4)(v) .....................................................................................................17, 18

29 C.F.R. § 2590.702(f)(4)(vi) .....................................................................................................12, 17

45 C.F.R. § 146.121(f)(4)(v) ........................................................................................................16, 17

*Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78
 Fed. Reg. 33158, 33163 (June 3, 2013) ...........................................................................................14

# I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant United Surgical Partners International, Inc. ("USPI" or "Defendant") respectfully submits this Motion to Dismiss and Memorandum of Law In Support of Its Motion To Dismiss Plaintiffs' First Amended Complaint (the "FAC") for lack of subject matter jurisdiction and failure to state a claim for relief pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The FAC, brought by Plaintiffs Dara Janosky and Lisa Mueller on behalf of a putative class, alleges that USPI imposed a tobacco surcharge that violated ERISA—but fails to plausibly allege either that any named Plaintiff actually has standing to challenge the allegedly unlawful aspects of the surcharge or that the facts pled actually amount to a cognizable legal claim. In particular, this Court should dismiss Counts I-IV of the FAC for multiple independent reasons:

**No Article III or Statutory Standing**—*First*, Plaintiffs do not adequately plead that they suffered any injury that was traceable to the alleged violations of the ERISA regulatory provisions they seek to remedy. Thus, they lack Article III standing to bring claims (either on their own behalf or on behalf of other putative class members) challenging those supposed violations. *Second*, with respect to Count III, Plaintiffs have failed to allege a concrete loss to the Plan—as required for their fiduciary breach claim—because their allegations regarding Plan loss are speculative, and they have not alleged that the Plan was underfunded or could not pay out benefits. *Third*, Plaintiffs lack Article III standing to seek prospective injunctive and declaratory relief because they are former USPI employees and any such relief would not personally affect them.

**Alleged Failure to Comply with ERISA and its Regulations**—Plaintiffs also fail to state a claim under Rule 12(b)(6). *First*, Plaintiffs' theory that USPI violated ERISA's anti-discrimination provision fails to state a claim because the statute only prohibits differential treatment based on "health status-related factors," and the use of tobacco is an activity, not a status.

1

After *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), this Court should construe the statute based on the meaning of its terms, not regulations adopted under it. *Second*, Plaintiffs' claim that a plan participant who completes a tobacco cessation program must receive retroactive reimbursements fails because the statute requires only the "full reward"—it provides nothing about retroactive reimbursement. *See* 42 U.S.C. § 300gg-4(j)(3)(D); *see also Williams v. Bally's Mgmt. Grp., LLC*, 2025 WL 3078747, at *10-11 (D.R.I. Nov. 4, 2025). *Third*, Plaintiffs' claim in Count II that USPI provided inadequate disclosures in its Plan documents fails as a matter of law because the relevant documents either (i) satisfied the disclosure requirement or (ii) were not required to include certain disclosures because the materials did not describe the wellness program's terms. *See* 42 U.S.C. § 300gg-4(j)(3)(E). *Finally*, Plaintiffs' allegation that ERISA does not permit an employer to condition a participant's ability to avoid the surcharge on dependents' conduct is misplaced; the regulations specifically provide that a dependent may participate in a wellness program. *See* 29 C.F.R. § 2590.702(f)(4)(ii).

**Alleged Breach of Fiduciary Duty (Counts III and IV)**—Counts III and IV should also be dismissed under Rule 12(b)(6) because designing and implementing a tobacco surcharge program is not fiduciary conduct and Plaintiffs' allegations that USPI breached a fiduciary duty are speculative and conclusory. In the alternative, these counts should be dismissed as duplicative of Counts I and II.

## II.    BACKGROUND

USPI is a leading ambulatory surgery platform in the United States that partners with physicians and hospitals to deliver surgical care across the country. FAC ¶ 18. One of the benefits USPI offers eligible employees is participation in its Health and Welfare Benefits Plan (the

"Plan"), which is subject to the Employee Retirement Income Security Act of 1974 ("ERISA").[1]

*Id.* ¶¶ 2, 19; *see* Appendix to Motion to Dismiss ("App'x"), Ex. A (Declaration of Betsy Harrison "Harrison Decl.") ¶ 2 at 003. The Plan has at times had a tobacco cessation wellness program to encourage employees to make healthy choices. *See*, *e.g.*, App'x at 409, 449, 486, 521, 558, 598, 637, 673. The so-called "tobacco surcharge" applies to employees who self-identify that they or a family member enrolled on their medical plan uses tobacco products. *Id*. Employees can participate in a tobacco cessation program to have the surcharge removed. *See id.*[2]

Plaintiff Dara Janosky filed her initial putative class Complaint in the United States District Court for the Eastern District of Kentucky, on May 22, 2025. ECF No. 1. On August 4, 2025, Defendant moved to transfer the action to this District, where USPI is located. ECF No. 30. Judge David Bunning granted USPI's motion on October 29, 2025, and transferred the case. ECF Nos. 33, 34. Plaintiffs then filed the FAC, purporting to represent every USPI employee nationwide who paid a tobacco surcharge between 2014 and present, including employees who paid a tobacco surcharge only because a family member enrolled on their plan was a tobacco user. FAC ¶ 53.

Counts I and II of the FAC allege that the Plan contains an unlawful and discriminatory tobacco surcharge in violation of 29 U.S.C. § 1182(b), 42 U.S.C. § 300gg-4(j)(3)(D)-(E), and ERISA's implementing regulations. Specifically, Count I challenges the Plan's provision of prospective relief only to those who complete the wellness program (*i.e.*, relief from the surcharge

---

[1] The FAC refers to USPI's health and wellness program offerings as a single Plan applicable to all USPI's employees. *E.g.*, FAC ¶¶ 2, 19. For purposes of this motion only, USPI accepts this assertion. However, USPI reserves all rights to challenge the factual basis for this and all other aspects of Plaintiffs' claims at the appropriate time.

[2] In an apparent holdover from another case, the FAC occasionally refers to purported "vaccine surcharges." *See*, *e.g.*, FAC ¶¶ 15, 60. But Plaintiffs never allege that USPI had any such program or that the Plan imposed any such surcharge. No such program exists. *See generally* App'x, Exs. A1-A12.

3

for the remainder of the year), and Count II challenges USPI's provision of notice. FAC ¶¶ 64-67, 71-72. Both counts seek relief under 29 U.S.C. § 1132(a)(3) for "all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions," including as set forth in the Prayer for Relief. *Id.* ¶¶ 69, 74. Counts III[3] and IV bring claims for relief under ERISA §§ 502(a)(2) and (a)(3), alleging that USPI breached its fiduciary duties and engaged in a prohibited transaction by administering a surcharge that allegedly did not comply with ERISA's requirements and using it to offset its contributions to the Plan. *Id.* ¶¶ 75-89, 90-100. Further, although not properly alleged in any count, Plaintiffs also assert that the Plan "made the surcharge contingent on the actions of dependents" and charged an amount that allegedly exceeded the "regulatory cap" for "certain participants." *Id.* ¶¶ 39, 43.

Notably, Plaintiffs' Complaint lacks any but the barest facts regarding their employment at USPI and their participation in the wellness program. For example, Plaintiffs do not allege when they worked for USPI or when they paid a surcharge, or even that the Plan that applied to them was subject to the regulations they claim the surcharge violated.

### III.    LEGAL STANDARD

A motion to dismiss for lack of constitutional or Article III standing is "granted pursuant to [Federal] Rule 12(b)(1)." *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017). The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion to dismiss. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). Named plaintiffs must establish their own "case or controversy" in order to seek relief on behalf of "any other member of the class." *Vuyanich v. Republic Nat. Bank of Dallas*, 723 F.2d 1195, 1200 (5th Cir. 1984) (citation and internal quotation

---

[3] Although the FAC labels both the third and fourth claims as "Count IV," this appears to be a typographical error. Defendants refer to the first Count IV (at page 30 of the FAC) as Count III.

marks omitted). And plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Further, on a Rule 12(b)(1) motion, the court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is not bound to accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 194 (5th Cir. 2020) (citation and internal quotation marks omitted). When deciding a Rule 12(b)(6) motion, "[i]f documents are referred to in the plaintiff's complaint and are central to [her] claims, but not attached, a defendant can attach them to a motion to dismiss and they will be considered." *Tex. Gen. Hosp., L.P. v. United Healthcare Servs. Inc.*, 2016 WL 3541828, at *3 (N.D. Tex. June 28, 2016) (citation omitted). Here, the FAC refers to the Plan's purported terms and conditions, references benefit guides and Plan documents, and quotes from USPI's 2019 benefits guide; moreover, whether the Plan met ERISA's requirements is central to Plaintiffs' claims. FAC ¶¶ 2, 4, 8-10, 12, 35-42, 50, 64-67, 71-72, 80-81, 86, 94-95, 97. Accordingly, USPI respectfully requests that the Court consider the Declaration of Betsy Harrison, which attaches the Plan documents in effect during Plaintiffs' employment with USPI.

5

## IV.    ARGUMENT

### A.    Plaintiffs Lack Standing to Bring Any of Their Claims.

#### 1.    Plaintiffs Lack Article III Standing for All Claims Because They Plead No Particularized Injury That Is Fairly Traceable to Defendant's Conduct.

"There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). In holding that plan participants lacked standing to bring an ERISA claim, the Supreme Court emphasized that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 538 (citation and internal quotation marks omitted). Here, Plaintiffs lack standing to assert Counts I-IV because they do not plead a "concrete and particularized" injury that is "fairly traceable" to the supposed violation of the 2013-enacted ERISA regulations they seek to enforce. *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (internal quotations omitted).

When seeking relief under 29 U.S.C. § 1132(a)(3), as with any other claim, plaintiffs must "state an injury in fact." *Guenther v. BP Ret. Accumulation Plan*, 2017 WL 6611634, at *6 (S.D. Tex. Feb. 17, 2017) (dismissing § 1132(a)(3) claims where complaint was "couched entirely in generalizations about losses that may be borne by the group" but did not include "allegations specific to Plaintiffs."). Here, Plaintiffs' claimed "injury" is not the existence of a tobacco surcharge; they never dispute that the Plan could impose such a surcharge on participants who do not complete an appropriate wellness program. *See* 29 U.S.C. § 1182(b)(2)(B) (explicitly permitting lower premiums for "adherence to programs of health promotion and disease prevention"). Instead, their "injury" is that the program here included various supposed violations of ERISA's implementing regulations. *See*, *e.g.*, FAC ¶¶ 8-10, 37-41. But Plaintiffs do not allege that these provisions harmed—or even applied to—them individually. Indeed, Plaintiffs do not even allege that they actually participated in the Plan at any point after January 1, 2014, when the

6

2013 ERISA regulations related to wellness programs took effect, even though their claims rest almost entirely on ostensible violations of those regulations (*e.g.*, FAC ¶¶ 32, 65, 71-72, 86, 97).

Notably, a plaintiff's mere *participation* in a plan that had an unlawful aspect is insufficient to support standing where the plaintiff individually experienced no concrete harm as a result of that particular aspect. In *Locascio v. Fluor Corp.*, 2023 WL 320000, at *3 (N.D. Tex. Jan. 18, 2023), for example, the court held that an individual "suffered no injury" to bring a putative ERISA class claim because she did not "invest in" the relevant options of the benefits plan at issue.  In other words, even if it were true that the Plan fiduciaries violated ERISA by keeping investment options that "competent fiduciaries would not have retained," that did not confer standing on a plaintiff who was not actually hurt by the decision to retain those investment options. *Id.* at *2. Similarly, to the extent that Plaintiffs point to their mere payment of the tobacco surcharge as their injury, that is not "traceable" to the alleged violations, because Plaintiffs have failed to plead that they would have paid any less in tobacco surcharges in the absence of the supposed violations (*e.g.*, by pleading that they completed a cessation program mid-year and were denied a refund).

While Plaintiffs advance multiple complaints about USPI's program, they fail to connect any personal harm to any of those complaints:

Retroactive Reimbursement: A core theory of the FAC is that USPI's Plan violated ERISA because participants who completed a tobacco cessation program as a "reasonable alternative standard" did not receive the "full reward" that a Plan participant who did not use tobacco enjoyed, since USPI stopped collecting tobacco surcharges upon completion of such a program but allegedly did not refund surcharges the participant had already paid that year. FAC ¶¶ 8, 37. However, Plaintiffs do not plead that they ever enrolled in a tobacco cessation program, completed a program, or were entitled to a surcharge reimbursement that USPI failed to remit. Plaintiffs do

not even plead that they *intended* to take advantage of a cessation program but were unable to do so due to some fault of USPI's. Because Plaintiffs do not allege that they took *any* steps to pursue or secure a retroactive reimbursement, they allege no injury in fact based on USPI's alleged policy not to provide such reimbursements. *Guenther*, 2017 WL 6611634, at \*6; *Thole*, 590 U.S. at 538.

Dependents' Tobacco Use: Plaintiffs similarly do not plead that they experienced any personal impact from the Plan's alleged violation of ERISA "[b]y imposing the tobacco surcharge at the family level, regardless of whether the employee uses tobacco[.] " FAC ¶ 41. Plaintiffs do not plead that they ever even *enrolled* dependents in the Plan, much less that such dependents used tobacco or were the reason for the tobacco surcharge. Therefore, they allege no injury-in-fact based on the allegedly unlawful surcharge as applied to participants' family members and their alleged payment of the tobacco surcharge is not traceable to that purported condition. *See Locascio*, 2023 WL 320000, at \*3.

Alleged Lack of Notice: Plaintiffs do not allege any injury in fact traceable to any violation of ERISA's regulatory notice provisions. Plaintiffs allege that but for USPI's alleged failure to include clear information about the reasonable alternative standard in Plan documents, they "*could have* taken steps to avoid the surcharge[.]" FAC ¶ 43 (emphasis added). Plaintiffs do not, however, plead that they *would have* participated in a cessation program to avoid the surcharge if they had received a different form of notice, or even that they did not read and understand the notice that Plaintiffs acknowledge was contained in the Benefits Guide.  FAC ¶¶ 36-37; *see Campaign Legal Center v. Scott*, 49 F.4th 931, 936 (5th Cir. 2022) (stating that "[e]ven if Plaintiffs had a right to the records sought," they lacked informational injury standing because they had not alleged concrete "downstream consequences" from the alleged failure to receive required information).

Alleged Excessive Fees: Finally, Plaintiffs include a chart that purports to show that USPI's tobacco surcharge is excessive compared to the premium cost for certain participants based on income, FAC ¶ 40, but do not plead that this chart (from Plan Year 2019) applied to them, their income for the relevant Plan Year, or that they paid an excessive fee based on their income in any Plan Year. Plaintiff Mueller merely pleads that she paid $26.92 per pay period and that this was "more than 50% of her medical premium of $49.85 [] throughout the relevant period," but she does not plead the dates this period allegedly covered or that the 2019 Plan documents referenced applied to her. *Id.* Again, Plaintiffs' barebones allegations do not show that they were injured by the allegedly unlawful Plan design and this claim should be dismissed for lack of standing.

**2.      Plaintiffs Fail to Allege a Cognizable Loss to the Plan (Count III).**

Plaintiffs also lack both statutory and constitutional standing to bring their claims under Count III in particular because that claim requires plausible allegations of harm to the Plan, which Plaintiffs do not make. ERISA allows participants to "sue for restoration of plan losses and other equitable relief," "[b]ut the cause of action does not affect the Article III standing analysis." *Thole*, 590 U.S. at 544. Count III pleads "plan-level relief" pursuant to 29 U.S.C. §§ 1104, 1106, and 1109; Section 1109 is explicit that a person who breaches a fiduciary duty to a plan "shall be personally liable to make good to such plan any losses *to the plan* resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." *Id.* (emphasis added); *see also Williams*, 2025 WL 3078747, at *5. Because ERISA § 502(a)(2) [29 U.S.C. § 1132(a)(2)], under which Plaintiffs bring Count III, "does not provide a remedy for individual injuries distinct from plan injuries," Plaintiffs lack standing unless they have plausibly pled (and can prove) harm to the Plan. *Id.* (citation omitted).

Plaintiffs seem to recognize this requirement because they plead speculative conclusions about the Plan, specifically that USPI used tobacco surcharge payments to "offset their own

contributions to the Plan" and that "the Plan would have had more in it if Defendant had made its agreed-upon contributions along with the funds generated by the surcharge." FAC ¶ 85. But Plaintiffs allege no facts to support these speculative conclusory statements, including facts regarding how USPI manages tobacco surcharges and Plan assets or why the Plan would have had more value if USPI had managed the surcharges differently. If a Plaintiff was, for example, denied a retroactive reimbursement of a tobacco surcharge, but the Plan ended up with the same amount of money, that is not a claim of a *Plan* injury, but an individual one.  Moreover, the Plan is "self-funded," which means that USPI is responsible for paying claims out of employee contributions and bearing the financial risk. *See* App'x, at 451, 488, 524, 600, 639, 676; *see also id.* ¶ 4 at 003. Plaintiffs do not allege that the surcharge caused the Plan to be underfunded or threatened the Plan's payment of benefits. Thus, Plaintiffs fail to allege that the Plan suffered any concrete injury.

In *Williams*, the court dismissed similar claims that a defendant "pocketed the tobacco surcharge 'to the detriment of the Plan'" and "'enriched itself at the expense of the Plan'" because the alleged injury to the Plan was "speculative" and "contained in conclusory statements." *See id.*, 2025 WL 3078747, at *6. Additionally, the court noted that any alleged harm suffered by the Plan from the imposition of an allegedly unlawful surcharge was not redressable because the "proper remedy [] would be for the surcharge to be returned to Plan participants, and not to the Plan itself." *Id.* Plaintiffs' Count III should be dismissed for the same reasons.

### 3. Plaintiffs Lack Article III Standing to Bring Claims for Prospective Declaratory and Injunctive Relief.

As former USPI employees, Plaintiffs also lack standing to bring claims for prospective declaratory and injunctive relief.  Regardless of whether a plaintiff has standing to sue for damages, she must establish separate standing to seek prospective relief. *See Soc. of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992). To obtain prospective relief, a plaintiff must show

"either continuing harm or a real and immediate threat of repeated injury in the future." *Id.* Here, Plaintiffs plead that they were terminated from USPI before they filed suit in 2025. FAC ¶¶ 15, 16. And they do not include any allegations that they *currently* participate in the USPI Plan or that they intend to become re-employed or participate in the Plan at some future point. Accordingly, Plaintiffs have no standing to seek relief concerning how the Plan's terms should apply, or how the Plan should be administered, in the future. Because they are no longer participants in the Plan, none of those changes would affect Plaintiffs in any way whatsoever. In other words, even if the Court were to grant Plaintiffs' requests for prospective declaratory and injunctive relief, Plaintiffs would not actually benefit and thus any alleged injury could not be redressed by a favorable decision. *See Wagner v. Hess Corp.*, 2025 WL 888428, at *4 (N.D. Tex. Mar. 21, 2025) (dismissing request for injunctive relief because there was "no allegation that the plaintiff expects to rejoin the Plan in the future," so there was "no threat of an imminent injury"). Those aspects of Plaintiffs' requested relief thus must be dismissed for this additional reason.

**B.    Plaintiffs' Claims That USPI's Plan Did Not Comply With Statutory and Regulatory Requirements Should Be Dismissed Under Rule 12(b)(6).**

**1.    Tobacco Use Is Not a Health Status-Related Factor Under 29 U.S.C. § 1182.**

Plaintiffs' claims depend on the erroneous premise that requiring a higher medical premium from participants who use tobacco products than from those who do not amounts to unlawful discrimination based on a "health status-related factor." FAC ¶ 65. But use of tobacco products is in no sense a "health *status*"; it is conduct. In other words, Plaintiffs' suit targets a conduct-based, rather than status-based, distinction, because ERISA's regulations purport to alter the scope of the statutory prohibition. After the Supreme Court's overruling of *Chevron* deference to agency regulations, Plaintiffs are not entitled to enforce restrictions in the regulations that are nowhere in the statute.

11

Construing ERISA's scope begins, of course, with the statutory text. As is relevant here, under 29 U.S.C. § 1182(b)(1), group health plans may not require individuals "to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor[.]" ERISA defines "health status-related factor" to "mean[] any of the factors described in section 1182(a)(1) of this title." 29 U.S.C. § 1191b(d)(2). Section 1182(a)(1), in turn, lists the following eight "health status-related factors": (A) Health status; (B) Medical condition (including both physical and mental illnesses); (C) Claims experience; (D) Receipt of health care; (E) Medical history; (F) Genetic information; (G) Evidence of insurability (including conditions arising out of acts of domestic violence); and (H) Disability. Charging a higher premium based on an individual's tobacco use does not, on its face, discriminate against any factor listed in 29 U.S.C. § 1182(a)(1). Instead, each of the identified factors is either a true status or characteristic (*e.g.*, medical condition or genetic information) or a past experience (*e.g.*, claims experience, past health care, medical history).

Principles of statutory construction dictate that when "[a] definition [] declares what a term '***means***[,]'" that definition "excludes any meaning that is not stated." *Burgess v. U.S.*, 553 U.S. 124, 130 (2008) (citation omitted) (emphasis added). Use of tobacco—like alcohol or drug use, dietary choices, or risky behaviors—is not only not included in Section 1182(a)(1), but is of a different nature than the factors that *are* included.  That should be the end of the matter.

Notably, Plaintiffs do not plead that tobacco use is covered under any specific § 1182(a)(1) health status-related factor. Instead, they appear to presume that tobacco use is covered because the Department of Labor has issued regulations regarding ERISA wellness programs, which include as examples "tobacco use surcharge" programs. *See* 29 C.F.R. § 2590.702(f)(4)(vi), at Examples 6-8. But the agency's interpretation of the statute as reaching beyond its plain text to

encompass particular behaviors cannot change the law.  Indeed, following the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, it does not even matter if Plaintiffs could show ambiguity in the statute's plain language setting forth the circumstances that constitute health status-related factors, because courts no longer apply *Chevron* deference to agency interpretations of ambiguous statutes. 603 U.S. 369, 413 (2024). Instead, courts must "use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity." *Id.* at 400. And, if Congress's intent in enacting the statute is clear, which can be discerned by "employ[ing] traditional tools of statutory construction," then a reviewing court should also "reject administrative constructions which are contrary to [that] intent." *Id.* at 396–97 (internal citations and quotation marks omitted).

Here, in promulgating a concrete list of eight factors that does not include health-related conduct or behaviors, Congress unambiguously expressed its intent to prohibit discrimination based on *status*, rather than *conduct.* A surcharge based on tobacco *use* is not a status.  And even if, pre-*Loper Bright*, the statute could have been deemed ambiguous, the Court's clear direction to scrutinize the statute to find the best meaning requires the reading that Congress intentionally limited this non-discrimination principle to classifications based on status. Accordingly, the Court should "reject [the] administrative construction[] which [is] contrary to clear congressional intent" and dismiss Counts I-IV for failure to state a claim under the statute. *See Loper*, 603 U.S. at 396.

### 2.    Count I Fails to State a Claim Regarding the "Full Reward" Requirement.

Plaintiffs rely on conclusory, threadbare allegations that USPI did not provide a "full reward" to Plan participants who satisfy the reasonable alternative standard. FAC ¶¶ 4, 8. As discussed in Section IV(A)(1), *supra*, Plaintiffs never allege that they requested the reward—let alone that they participated in the cessation program. Nor do they provide any allegations

13

concerning USPI's administration or payment of the "full reward." Such threadbare allegations cannot meet the plausibility standard to survive a motion to dismiss. *Schweitzer*, 960 F.3d at 194.

Putting aside Plaintiffs' insufficient allegations, their contention that USPI violated ERISA because it purportedly did not provide retroactive payments to participants who completed the program fails as a matter of law. Plaintiffs' entire claim hinges on a statement in the preamble to the regulations providing that the requirement that the "full reward" be available to a participant completing a wellness program means that a participant must get a retroactive payment to the beginning of the year. FAC ¶¶ 4, 6, 32 (citing *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013)). But a retroactive payment requirement is found *nowhere* in the statute or the regulatory text. *See* 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv). Rather, the regulation simply repeats the statutory requirement that an undefined "full reward" must be made available to all similarly situated individuals. *See* 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv). Thus, Plaintiffs ask this Court to impute language to the body of the statute that Congress did not include there, and which conflicts with existing language.

Plaintiffs attempt to sidestep this conflict by stating that "courts must still defer to an agency's interpretation of its own regulations" under *Auer v. Robbins*, 519 U.S. 452 (1997). FAC ¶ 3. But the Court cannot defer to the agency's interpretation of the "full reward" in the preamble because it does no more than parrot the language of the statute. Specifically, under Supreme Court precedent, courts do not defer to an agency's interpretation of a regulation that merely parrots the language of a statute because "[a]n agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language." *Gonzales v. Or.*, 546 U.S. 243, 257 (2006). And,

14

following *Loper Bright*, courts must independently review and interpret statutory text, rather than defer to agency interpretations of an ambiguous statute. Applying these rules, the agency's interpretation of ERISA's undefined "full reward" is not binding.

The District of Rhode Island recently dismissed a similar claim at the pleading stage because it sought to impose requirements that are nowhere contained in the statute. *Williams*, 2025 WL 3078747, at *8–11. After determining that the anti-parroting canon applied, the court declined to apply *Auer* deference and interpreted the phrase on its own. *Id.* at *10–11. The court held, as a matter of law, that the statute does not mandate retroactive reimbursement. *Id.* at *11. Specifically, after noting that the reward can take the form of an "absence of a surcharge" under 42 U.S.C. § 300gg-4(j)(3)(A), the court explained that there was an ambiguity presented by the "full reward" language, which could be read to reward two participants in the same way (*i.e.*, *not* being prospectively charged a tobacco surcharge) even if those individuals received the reward at different times during the year. *Id.* Given that ambiguity, the Court declined to read "a retroactive reimbursement requirement that is not clearly defined" into the statute. *Id.*[4]

Congress also knew how to use the word "reimburse" in ERISA but *chose not to* include it in the relevant provision, undercutting Plaintiffs' conclusion that "full reward" necessarily contemplates reimbursement. *See Christiana Tr. v. Riddle*, 911 F.3d 799, 805 (5th Cir. 2018) ("When Congress includes particular language in one section of a statute but omits it in another,

---

[4] By contrast, out-of-district courts in cases that involved allegedly similar wellness programs as USPI's have incorrectly failed to analyze whether the anti-parroting canon applied. *See Bokma v. Performance Food Group, Inc.*, 783 F. Supp. 3d 882, 905 (E.D. Va. 2025); *Mehlberg v. Compass Grp. USA, Inc.*, 2025 WL 1260700, at *5–6 (W.D. Mo. Apr. 15, 2025); *see also Paul Wilson et al. v. Whole Food Market, Inc. et al.*, Case No. 1:25-cv-00085, at 24, 28-29 (W.D. Tex. Jan. 20, 2026) (although the court "assume[d] without deciding" that *Auer* deference was not required, it still heavily relied on the DOL's interpretation of its parroting regulation to conclude that ERISA mandates retroactive reimbursement, ignoring other indicia in the statute that Congress did not contemplate such a requirement).

15

we presume that Congress intended a difference in meaning.") (cleaned up). Indeed, the statute references "reimburse" *twice* in the section immediately preceding the section using "full reward." *Compare* § 300gg-4(j)(2)(A) and § 300gg-4(j)(2)(D) *with* § 300gg-4(j)(3)(D). Plaintiffs' "full reward" interpretation wholly ignores this textual conflict.

This Court should follow the reasoning in *Williams* and traditional canons of statutory construction and dismiss Count I because the statutory text does not support that Congress intended to impose a retroactive payment requirement for a Plan to satisfy the "full reward."

**3.    Count II Fails to State a Claim That USPI Did Not Provide Sufficient Notice.**

Plaintiffs allege that USPI violated ERISA regulations by not apprising participants in the benefit guides about "the availability of a reasonable alternative standard," "contact information for how to qualify for the alternative," and a statement "that the recommendation of a participant's personal physician will be accommodated." FAC ¶ 71 (citing 45 C.F.R. § 146.121(f)(4)(v)). Plaintiffs further allege in conclusory fashion that "the SPD or the Plan document" omitted notice of "the tobacco surcharge and reasonable alternative standard," which Plaintiffs assert was required based on—yet again—a statement in the regulatory preamble. *Id.* ¶ 72 (citing 78 Fed. Reg. 33158, 33166 n. 24). However, Plaintiffs fail to state a claim because the relevant documents *did* satisfy the notice requirements. Indeed, Plaintiffs' notice claim revolves around a level of detail that is not even required by the statute, which states only that plan materials "*describing* the terms of the wellness program" shall disclose "the availability of a reasonable alternative standard (or the possibility of waiver of the otherwise applicable standard)." *See* 42 U.S.C. § 300gg-4(j)(3)(E) (emphasis added).

At the outset, the Court should reject Plaintiffs' argument that the Plan documents do not notify participants of a "reasonable alternative standard" merely because they claim the alternative standard itself is not "reasonable." This argument appears to turn on Plaintiffs' contention that the

alternative is unreasonable "because it ties the value of what participants receive to the time he or she completes the program," or because the "full reward" is made "contingent on the behavior of dependents." FAC ¶¶ 41, 65. But, as discussed herein, retroactive payment upon completion of the alternative standard is not required as a matter of law, nor is it unlawful for a Plan to condition a participant's ability to avoid the surcharge on dependent conduct. Accordingly, Plaintiffs have no basis to allege that USPI's notice was defective because it failed to describe a standard that is not required under the law. In any event, USPI's notice was fully adequate, as follows:

Benefit Guides: The 2019-2022 benefit guides disclose the tobacco user surcharge in substantially similar form as ¶ 36 of the FAC. *See* App'x at 409, 449, 486, 521, 558, 598, 637, 673. Contrary to Plaintiffs' assertions, this statement satisfies each of the regulatory notice requirements: (i) it notifies participants of the "availability of a reasonable alternative standard to qualify for the reward" (*i.e.*, USPI's "tobacco cessation program"); (ii) it includes "contact information" for accessing the alternative by referencing the telephone number participants can call which is located on the back of their medical ID card; and, (iii) it advises participants that they may involve their physician to avoid the surcharge if they do not meet the tobacco-free standard. *See* 29 C.F.R. § 2590.702(f)(4)(v); 45 C.F.R. § 146.121(f)(4)(v). In any event, verbatim adherence to the regulatory text is not required. For instance, in examples provided by the Department of Labor, it is sufficient to inform plan participants that they have the "option to involve [their] personal physician" (which USPI's disclosure clearly does)—USPI need not state exactly that "recommendations of an individual's personal physician will be accommodated." *See* 29 C.F.R. § 2590.702(f)(4)(vi), at Examples 4, 6.

Moreover, although USPI's benefit guides *do* fully disclose the alternative standard, they were not even required to do so, because the documents at issue do not describe the terms of the

wellness program. Under the statute, disclosure of "the availability of a reasonable alternative standard" is only required to accompany a disclosure describing the terms of a wellness program; the mere mention of the program does not trigger the requirement. *See* 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v). To the extent Plaintiffs contend that the regulatory preamble contemplates that plan disclosures "[referencing] a premium differential based on tobacco use" are "disclosure[s] describing the terms of a health-contingent wellness program," 78 Fed. Reg. 33158, 33166, the anti-parroting canon is again implicated. That is because the "regulatory language being interpreted by the preamble [] is almost identical to the underlying statute," so the court need not apply *Auer* deference. *Williams*, 2025 WL 3078747, at \*13.

*Williams* is again instructive here. After reviewing benefit guides with similar language as USPI's, the court concluded that the full notice obligations were not triggered because the guides did not "concretely describe the terms of the program beyond noting that completion of the program will result in elimination of the tobacco surcharge." *Id.* This holding was bolstered by the fact that the benefit guides at issue included a warning, like here, explaining that participants should refer to plan-specific documents for more detailed information. *See id.*; *see also, e.g.,* App'x at 405, 443, 480, 516, 554, 592, 631, 668. This Court should reach the same conclusion.

Summary Plan Descriptions (SPDs):[5] Similar to the benefit guides, neither the statute nor the regulation requires that SPDs discuss the reasonable alternative standard because they do not describe the terms of the wellness program. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v). The 2019 SPD states that USPI "may, from time to time, offer or arrange for

---

[5] Plaintiffs make vague references to an unspecified governing "Plan document" in the FAC. FAC ¶¶ 10, 38, 72. But the only Plan documents in effect during Janosky and Mueller's employment were the SPDs. *See, e.g.*, App'x at 405, 443, 480, 516, 554, 592, 631, 668 ("While this Guide is a tool to answer most of your questions, full details of the plans are contained in the Summary Plan Descriptions (SPDs), which govern each plan's operation.").

various entities to offer discounts, benefits, or other consideration to our members for the purpose of promoting the general health and well being of our members." App'x at 015. The 2020-2022 SPDs state that "External Review is available for Adverse Benefit Determinations and Final Adverse Benefit Determinations . . . including, but not limited to . . . determinations whether you are entitled to a reasonable alternative standard for a reward under a wellness program[.]" App'x at 100, 209, 320-21. The 2020-2022 SPDs further disclose that "[i]ndividuals in wellness programs who are unable to participate in the[] incentive[] or disincentives due to an adverse health factor shall not be penalized based upon an adverse health status," that the Plan would "allow a reasonable alternative" for individuals to "satisfy otherwise applicable wellness program standards," and that participants should "[c]ontact BCBSTX for additional information regarding any value based programs[.]" App'x at 147, 255, 368. Since these materials "merely mention" the wellness program, but do not "concretely describe" its terms, notice obligations are not triggered. *Williams*, 2025 WL 3078747, at *13.[6] Accordingly, Plaintiffs fail to state a claim regarding the sufficiency of USPI's disclosures.

### 4.    Plaintiffs Fail to State a Claim Regarding Dependents' Conduct.

Although not properly alleged in any specific Count, Plaintiffs distort an ERISA provision to contend that the Plan violates ERISA and its regulations because a participant's ability to avoid the surcharge is contingent on dependents' health status and conduct. FAC ¶¶ 2, 9, 41. They allege

---

[6] Further, Plaintiffs' suggestion that wellness program terms were required to appear in (or be described by) the SPDs based on a footnote to the preamble falls flat. FAC ¶¶ 34, 72. To start, the text only states that SPDs or other applicable plan documents "are **generally** required" to disclose wellness program terms, not that the terms *must* be disclosed in all circumstances (or that the terms need to be *described*). 78 Fed. Reg. 33158, 33166 n. 24 (emphasis added). Regardless, this purported requirement appears nowhere in the statute or regulation and does not carry the force of law. *See Blanco v. Samuel*, 91 F.4th 1061, 1076 (11th Cir. 2024); *Tex. v. U.S. Dep't of Health & Hum. Servs.*, 770 F. Supp. 3d 940, 955 (E.D. Tex. 2025) (noting that regulatory preambles are "not binding and cannot be read to conflict with the language of the regulation itself.").

19

that "ERISA does not permit employers to deny a participant the full reward, or continue charging a surcharge, based on the conduct or health status of a dependent." FAC ¶ 9 (citing 29 U.S.C. § 1182(b)(1) and 29 C.F.R. § 2590.702(c)(1)). But that is not what Section 1182(b)(1) says. To the contrary, it provides only that a plan "may not require any individual . . . to pay a premium or contribution which is *greater than* such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 29 C.F.R. § 2590.702(c)(1) (emphasis added). In other words, discrimination based on health status is improper as to *either* the health status of the participant *or* his or her dependent.

But this says nothing about whether a Plan may condition a participant's ability to avoid the surcharge on dependent conduct. If anything, the regulations suggest that it can; they specifically contemplate that "any class of dependents (such as spouses, or spouses and dependent children) may participate in the wellness program." 29 C.F.R. § 2590.702(f)(4)(ii). In any event, Plaintiffs here do not actually allege that they paid a premium that was greater than any other participant because of a dependent's conduct. Further, for the reasons explained in Section IV(B)(1), *supra*, tobacco use should not be considered a health status-related factor. Thus, a participant's ability to avoid USPI's tobacco surcharge is not dependent on the "health status" of their dependents. Plaintiffs' claim that the Plan violates ERISA by including a surcharge for dependents' tobacco use should therefore be dismissed.

## C.    Plaintiffs' Fiduciary Duty Claims Should Be Dismissed Under Rule 12(b)(6).

### 1.    USPI's Actions Are Not Fiduciary Decisions.

The decision to adopt and implement a wellness program is not a fiduciary act that will support Plaintiffs' claims in Counts III and IV. As courts in this Circuit recognize, an employer acts as a settlor, not a fiduciary, when it designs plan provisions and implements them by their

20

terms. *See Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 430 (5th Cir. 2003) ("[E]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust.") (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996)); *see also Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).

Here, Plaintiffs allege that USPI "breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements," including by, for example, "failing to make available the 'full reward,'" and "failing to cap the amount of the surcharge." FAC ¶¶ 81, 86, 97. Plaintiffs also plead that USPI "designed, controlled, and disseminated the benefit guides and other Plan communications describing the surcharges." *Id.* ¶ 94. In each instance, rather than alleging that the Plan's fiduciaries exercised discretion by deviating from faithfully administering the Plan, Plaintiffs' grievance is that USPI designed the Plan and then administered it according to its written terms in a way that did not comply with ERISA. They thus complain about settlor conduct, which cannot support a breach claim. Indeed, Judge Bunning's order transferring the case to this Court recognized that this case is centered around "discussions" of the "*formulation* of the Plan"—*i.e.*, settlor conduct. ECF No. 33 at 17-19 (emphasis added). Further, USPI's decision on whether to "properly disclose material information about the wellness programs" is merely a decision about whether to include certain provisions, which is a decision regarding plan design. FAC ¶¶ 86, 97. And even Plaintiffs' allegations that USPI withheld unlawful surcharges and held them in a general account relate to USPI's decision to include the tobacco surcharge in the Plan and implement it. *Id.* ¶ 78; *see Arnett v. Aetna Life Ins. Co.*, 2016 WL 6883203, at *3 (S.D. Tex. Apr. 14, 2016) (dismissing breach of fiduciary duty claim because "withholding of premiums" from a check is a "ministerial" and not a fiduciary function). Plaintiffs

even fail to allege that USPI exercises any discretion by, for example, choosing which tobacco users pay the surcharge and the amount each participant will pay for the surcharge. Rather, USPI collects the surcharge for all participants who "attest to . . . being tobacco users." App'x, at 409, 449, 486, 521, 558, 598, 637, 673. Ultimately, all of Plaintiffs' allegations show that the conduct they challenge is *settlor* conduct.[7]

Likewise, there is no prohibited transaction on which to base Plaintiffs' claims under § 1106(a)(1) because there is no underlying fiduciary conduct. *See* 29 U.S.C. § 1106(a)(1) (describing prohibited transactions "between a plan and . . . [a] fiduciary with respect to a plan"). ERISA's prohibited transaction provisions apply to transactions made by a plan's fiduciary *in its fiduciary capacity*. *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000) ("§ 406(a) [§ 1106(a)] imposes a duty only on *the fiduciary* that causes the plan to engage in the transaction") (emphasis added); *Lockheed Corp.*, 517 U.S. at 892.

### 2.    Plaintiffs Fail to Allege with Particularity That USPI Mismanaged Plan Assets.

This Court should also dismiss Counts III and IV because Plaintiffs' allegations that USPI mismanaged Plan assets are entirely speculative.  Plaintiffs claim that USPI violated 29 U.S.C. § 2510.3-102 by failing to segregate the tobacco surcharges from its general assets. FAC ¶¶ 47, 78, 96. Plaintiffs conclude, without any supporting facts, that the tobacco surcharges are Plan assets merely because they are participant contributions withheld from participants' paychecks and

---

[7] To the extent that Plaintiffs have alleged a failure to monitor claim, *see, e.g.*, FAC ¶¶ 86, 97, any such claim is derivative of their fiduciary breach claims and will not independently support a breach of fiduciary duty claim. *See In re: Idearc Erisa Litig.*, 2016 WL 7189980, at *7 (N.D. Tex. Feb. 26, 2016); *see also Singh v. RadioShack Corp.*, 882 F.3d 137, 150 (5th Cir. 2018). Alternatively, this claim simply attempts to recast settlor conduct as fiduciary conduct. Despite Plaintiffs' semantics, there is no difference between reviewing the terms of the Plan's surcharge and wellness provisions and deciding in the role of Plan sponsor to adopt or maintain such provisions and direct that they be followed.

held in USPI's general account in some instances for more than 90 days. FAC ¶ 47. However, Plaintiffs have not alleged any facts showing that the tobacco surcharges are Plan assets under the regulations, including because they have not alleged any facts showing that the tobacco surcharges are contributions. Thus, Plaintiffs have not alleged that UPSI breached any fiduciary duty or engaged in a prohibited transaction by failing to segregate funds it was obligated to segregate for the Plan. Further, Plaintiffs fail to allege any facts supporting their conclusion that USPI held the tobacco surcharges in its general assets for more than 90 days. For example, Plaintiffs do not allege any facts regarding how USPI manages tobacco surcharges after they are collected from participants' paychecks, or identify USPI's "general account" that the surcharges are allegedly held in. Accordingly, this Court is not required to accept these "legal conclusions" that USPI did not comply with 29 U.S.C. § 2510.3-102 as true. *See Schweitzer*, 960 F.3d at 194.

    **3.**    **Counts III and IV Should Be Dismissed as Duplicative of Counts I and II.**

Finally, Counts III and IV should be dismissed because they are derivative of Plaintiffs' failed claims under Counts I and II, and Plaintiffs already have an adequate remedy for the injuries they seek to redress under Counts III and IV. Counts III and IV are based on Plaintiffs' allegations that USPI imposed a tobacco surcharge that did not comply with ERISA's prohibition of unlawful discrimination based on a health status-related factor. However, for the reasons explained in Section IV(B)(1), *supra*, tobacco use is not a health status-related factor. Thus, USPI could not have breached a fiduciary duty by allegedly violating a provision of ERISA that does not apply to the tobacco surcharge program.

Courts in this Circuit routinely dismiss fiduciary duty claims under ERISA where a plaintiff already has "an adequate mechanism for redress" for other claims. *See Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 736 (5th Cir. 2014); *see also Swenson v. United of Omaha Life Ins. Co.*, 876 F.3d 809, 812 (5th Cir. 2017). Section 1132(a)(3) "allow[s] plaintiffs to sue for breach of

fiduciary duty for personal recovery *when no other appropriate equitable relief is available.*" *Hollingshead*, 589 F. App'x at 736 (emphasis added) (citing *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998)). Plaintiffs already seek to "enjoin any act or practice which violates any provision of this title or the terms of the plan," or "obtain other appropriate equitable relief" to redress any alleged injury caused by the alleged withholding of an unlawful surcharge in Counts I and II.  FAC ¶¶ 68, 73. Plaintiffs seek the same relief under Counts III and IV. FAC ¶¶ 88, 99. Further, the mere fact that Plaintiffs' claims under Counts I and II fail "does not make [their] alternative claim . . . viable" because they already have an adequate redress for their alleged injury under Counts III and IV. *See Hollingshead*, 589 F. App'x at 737 (citation omitted). Because Counts I and II already seek to address the injury for which Plaintiffs seek equitable relief in Counts III and IV, Plaintiffs cannot assert a separate ERISA claim for breach of fiduciary duty.

## V.    **CONCLUSION**

Accordingly, USPI respectfully requests that the Court dismiss with prejudice Counts I-IV pursuant to Rules 12(b)(1) and 12(b)(6), and for such other relief as the Court deems fair and just.

24

Dated:  January 28, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Ashley E. Johnson*

Karl G. Nelson
  TX Bar No. 14900425
Ashley E. Johnson
  TX Bar No. 24067689
2001 Ross Avenue
Dallas, Texas 75201
Tel:  (214) 698-3100
Fax: (214) 571-2900
Email:  KNelson@gibsondunn.com
Email:  AJohnson@gibsondunn.com

Jennafer Tryck (*pro hac vice forthcoming*)
3161 Michelson Drive
Irvine, CA  92612
Tel: (949) 451-4089
Fax: (949) 451-4220
E-mail:   JTryck@gibsondunn.com

*Attorneys for Defendant*

25

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January, 2026, I electronically filed a true and correct copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties and/or counsel of record.

*/s/ Ashley E. Johnson*
Ashley E. Johnson