# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

LISA MUELLER and DARA JANOSKY, §
on behalf of themselves and all others §
similarly situated §
§
§
v. § CIVIL ACTION NO. 3:25-CV-2934-S
§
UNITED SURGICAL PARTNERS §
INTERNATIONAL, INC. §

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant United Surgical Partners International, Inc.'s Motion to Dismiss for Lack of Standing Under Federal Rule 12(b)(1) and for Failure to State a Claim Under Federal Rule 12(b)(6) and Brief in Support ("Motion") [ECF No. 50]. The Court has reviewed the Motion, Plaintiffs Lisa Mueller and Dara Janosky's Opposition to the Motion ("Response") [ECF No. 54], Defendant's Reply Memorandum of Law in Further Support of the Motion ("Reply") [ECF No. 55], Defendant's Notice of Supplemental Authority in Support of the Motion ("Defendant's Notice") [ECF No. 62], Plaintiffs' Notice of Supplemental Authority ("Plaintiffs' Notice") [ECF No. 64], and the applicable law. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I. BACKGROUND

This case is a proposed class action arising out of a tobacco surcharge levied as part of a health plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. During the relevant time period, Defendant United Surgical Partners International, Inc., offered a health insurance plan to its employees ("Plan"). First Am. Class Action Compl. ("Complaint") [ECF No. 47] ¶¶ 2, 13. The Plan was subject to the provisions and statutory requirements of ERISA, and Defendant was the "sponsor of the Plan and the Plan

Administrator" under the statute. *Id.* ¶ 19. Plaintiffs Lisa Mueller and Dara Janosky are former employees of Defendant, participated in the Plan during their employment, and paid a tobacco surcharge under the Plan. *Id.* ¶¶ 15-17.

Under ERISA, group health plans like the one administered by Defendant cannot require individuals "to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." 29 U.S.C. § 1182(b)(1). The statute lists eight health status-related factors, one of which is "medical history." *Id.* § 1182(a)(1)(A)-(H). However, ERISA permits premium discounts or rebates as part of a wellness program for "health promotion and disease prevention." *Id.* § 1182(b)(2)(B). For the exception to apply, the wellness program must, among other things, (1) make the "full reward under the wellness program . . . available to all similarly situated individuals" and (2) disclose the availability of a "reasonable alternative standard" in all plan materials describing the program. 42 U.S.C. § 300gg-4(j)(3)(D)-(E).

In this case, the Plan imposed a tobacco surcharge of approximately $50 per month on participants who attested that they use tobacco, including Plaintiffs. Compl. ¶¶ 1, 15-17, 35. Defendant, through the Plan, offered participants a tobacco cessation program. *Id.* ¶ 35. Participants who completed the tobacco cessation program were entitled to have the tobacco surcharge removed "starting from the [wellness] program completion date through the end of the [P]lan year." *Id.* ¶¶ 36-37. Plaintiffs allege that because there was no provision for retroactive reimbursement of the tobacco surcharges already paid during the Plan year, regardless of when participants completed the wellness program, the program failed to provide the "full reward" required under ERISA. *Id.* ¶¶ 37, 64-65.

2

Plaintiffs challenge other aspects of the tobacco surcharge as well. They allege that Defendant deducted the surcharge from participants' wages on a pre-tax basis. *Id.* ¶ 45. Therefore, according to Plaintiffs, Defendant treated the surcharge "as part of the Plan's contribution rate structure," not as a fee. *Id.* In addition, Plaintiffs claim that, although the surcharges were Plan assets and Defendant was obligated to transmit them to the Plan, Defendant instead deposited the surcharges into its own general operating accounts. *Id.* ¶ 47. Plaintiffs allege that Defendant used the tobacco surcharge to offset Defendant's contributions to the Plan, improving Defendant's own financial position while reducing the funds available to the Plan. *Id.* ¶¶ 46-49.

Plaintiffs also claim that Defendant published both a benefits guide and a summary plan description ("SPD") for the Plan. *Id.* ¶ 38. According to Plaintiffs, the benefits guide failed to provide Plan contact information or inform participants that the wellness program would accommodate their personal physicians' recommendations, as required by the applicable regulations. *Id.* Further, the SPD did not include "any reference whatsoever" to the tobacco surcharge or any alternative to the wellness program. *Id.*

Plaintiffs bring two claims of ERISA violations, one for the failure to provide the full reward, *id.* ¶¶ 63-69, and one for failure to provide the required notice in the plan documents, *id.* ¶¶ 70-74. Plaintiffs also bring a breach of fiduciary duty claim on behalf of themselves, *id.* ¶¶ 90-100, and on behalf of the Plan, *id.* ¶¶ 75-89. Defendant moves to dismiss all of Plaintiffs' claims.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Under the Constitution, a federal court may decide only actual cases or controversies. U.S. CONST. art. III, § 2. A court properly dismisses a case where it lacks the constitutional power to

3

decide it. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). Dismissal for lack of subject matter jurisdiction is warranted when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

Standing is a component of subject matter jurisdiction, and it is properly raised by a motion to dismiss under Rule 12(b)(1). *See Hollis v. Lynch*, 121 F. Supp. 3d 617, 626 (N.D. Tex. 2015) (noting that "whether a party has proper standing is a question of subject matter jurisdiction" (citing *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006))). The requirement that a litigant must have standing "to invoke the power of a federal court is perhaps the most important of [the case-or-controversy] doctrines." *Allen v. Wright*, 468 U.S. 737, 750 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

### B. Rule 12(b)(6)

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (citation omitted). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). It only determines whether the plaintiff has stated a claim upon which relief can be granted. *See id.*

## III. ANALYSIS

Defendant moves to dismiss Plaintiffs' claims on several grounds. Mot. 1-2. First, Defendant argues that Plaintiffs lack standing because they (1) fail to allege that they suffered any injury traceable to Defendant's alleged conduct; (2) fail to allege that the Plan suffered a loss; and (3) are no longer employed by Defendant and thus cannot seek prospective relief. *Id.* at 1. Second, Defendant contends that Plaintiffs' claims must be dismissed for failure to state a claim because (1) under ERISA, tobacco use is an activity, not a protected health status; (2) nothing in the statute requires that a "full reward" include retroactive reimbursement; (3) Defendant's disclosures either satisfied the disclosure requirement or were not required to include what Plaintiffs allege; and (4) Defendant's actions in designing and implementing the surcharge program do not constitute fiduciary conduct, or, in the alternative, Counts III and IV should be dismissed as duplicative of Counts I and II. *Id.* at 23.

### *A. Rule 12(b)(1)*

To establish standing, Plaintiffs must show that (1) they suffered a concrete and particularized injury-in-fact; (2) their injury is fairly traceable to Defendant's conduct; and (3) a favorable judgment is likely to redress their injury. *Hous. Chron. Publ'g Co. v. City of League*

*City*, 488 F.3d 613, 617 (5th Cir. 2007) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Article III standing requires a concrete injury even in the context of a statutory violation," and "[t]here is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544, 547 (2020) (citation omitted). Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citation omitted).

### i. Particularized Injury Traceable to Defendant's Conduct

Defendant asserts that Plaintiffs lack standing because they did not suffer any injury traceable to Defendant's conduct. Mot. 6. According to Defendant, Plaintiffs never allege that they attempted to participate in the tobacco cessation program or that they saw or relied on any of the disclosures they allege are insufficient. Reply 1-2. Nor do Plaintiffs dispute that a tobacco surcharge may be lawful if it complies with ERISA. *Id.* at 2 (citing Resp. 3-5). According to Defendant, Plaintiffs would have paid the tobacco surcharge regardless of whether the cessation program and the Plan disclosures complied with the law. *Id.* at 2-3. Therefore, Defendant concludes, Plaintiffs' paying the tobacco surcharge is not "fairly traceable" to Defendant's allegedly unlawful conduct.

"ERISA's antidiscrimination rules prohibit [Defendant] from imposing a tobacco surcharge, unless all of the regulatory requirements of its . . . wellness program are satisfied." *Wilson v. Whole Food Mkt., Inc.*, No. 1:25-CV-00085-DAE, 2026 WL 196517, at *5 (W.D. Tex. Jan. 20, 2026) (cleaned up). Assuming Plaintiffs' factual allegations are true, as the Court must, *see N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (citation omitted), Defendant's tobacco surcharge would be unlawful, resulting in an injury traceable to Defendant's conduct when Defendant deducted an allegedly unlawful tobacco

surcharge from Plaintiffs' paychecks. Therefore, Plaintiffs have demonstrated standing on their claims. *See Wilson*, 2026 WL 196517, at *5-6 (concluding that the plaintiffs had standing where they paid an allegedly unlawful tobacco surcharge); *Baker v. 7-Eleven Inc.*, No. 3:25-CV-01609-X, 2026 WL 473252, at *2 (N.D. Tex. Feb. 19, 2026) (same); *Knight v. L H C Grp. Inc.*, No. 6:25-CV-00263, 2025 WL 4351515, at *3 (W.D. La. Nov. 18, 2025) (same), *report and recommendation adopted by* 2026 WL 513477 (Feb. 24, 2026).

### ii. Loss to the Plan

Defendant also challenges Plaintiffs' standing to bring a fiduciary duty claim on behalf of the Plan. Mot. 9. According to Defendant, Plaintiffs fail to allege a loss to the Plan, a requirement to bring a breach of fiduciary duty claim on behalf of the Plan. *Id.* at 9-10. Defendant also contends that it was not acting as a fiduciary and, regardless, Plaintiffs' allegations are speculative and conclusory. Reply 5.

Plaintiffs identify a loss to the Plan. Plaintiffs allege that Defendant, acting as a fiduciary, "treated the surcharge as part of the Plan's contribution rate structure"; that, because the surcharge was collected as a pre-tax deduction alongside other Plan contributions, the surcharges "were Plan assets from the moment of collection"; and that Defendant deposited the surcharges into its own operating accounts instead of into the Plan, thereby reducing its contribution to the Plan. Compl. ¶¶ 45-48, 78-79. Plaintiffs further allege that, by depositing surcharges into its own operating account instead of depositing them into the Plan, Defendant manufactured a gain for itself "(i.e., reduced cash outlays and float) and a Plan loss (i.e., lost employer contributions and earnings)." *Id.* ¶ 48. Therefore, according to Plaintiffs, Defendant breached its fiduciary duty under ERISA. Plaintiffs seek, among other remedies, that Defendant "make good to the Plan all losses resulting from its breaches." *Id.* ¶ 88. As the Court must accept Plaintiffs' factual allegations as part of the

7

standing analysis, Plaintiffs have demonstrated standing on their claim of breach of fiduciary duty on behalf of the Plan.

### iii. Prospective Relief

Finally, Defendant contends, and Plaintiffs seemingly concede,[1] that Plaintiffs cannot pursue prospective relief because they are no longer employed by Defendant. Mot. 10-11; Resp. 10 n.5. Therefore, the Court dismisses without prejudice Plaintiffs' claim for prospective relief for lack of standing.

### B. Rule 12(b)(6)

Defendant also moves to dismiss Plaintiffs' claims under Rule 12(b)(6). Mot. 11-23. As to Plaintiffs' ERISA claims, Defendant first argues that tobacco use is not a "health status-related factor" under ERISA, and therefore Defendant is permitted to charge tobacco users a higher premium. *Id.* at 11. Next, Defendant contends that nothing in ERISA requires a "full reward" to include retroactive reimbursement. *Id.* at 14. Defendant then asserts that its disclosures are sufficient under the law. *Id.* at 16.

Finally, Defendant attacks Plaintiffs' fiduciary duty claims. Defendant contends that it acted as a settlor, not a fiduciary. *Id.* at 20. Defendant states that Plaintiffs failed to allege with particularity that Defendant mismanaged Plan assets and that Plaintiffs' fiduciary breach claims are duplicative of their other claims and thus must be dismissed. *Id.* at 22-23.

---

[1] Plaintiffs state that their status as former employees "has no bearing on Plaintiffs' standing to seek retrospective monetary and equitable relief. . . . Thus, Plaintiffs' backward-looking claims remain justiciable." Resp. 10 n.5. This statement implies that Plaintiffs no longer seek prospective relief.

*i. Count I*

Defendant moves to dismiss Count I, maintaining that tobacco use is not a health status-related factor and that ERISA does not require the "full reward" to offer retroactive reimbursement. Mot. 11-13.

*a. Tobacco Use a Health Status-Related Factor*

Turning first to Defendant's contention that tobacco use is not a health status-related factor, the Court notes that tobacco use is "part of a person's medical history." *Baker*, 2026 WL 473252, at \*4 ("A person's tobacco use history is routinely recorded, assessed, and relied upon in medical care."). While tobacco use is an activity, not a condition, "Congress did not write a list [of health status-related factors] that excluded activities." *Id.* Further, Department of Labor ("DOL") regulations treat tobacco cessation programs as exceptions to ERISA's prohibition on health status-related factor discrimination. *See* 29 C.F.R. § 2590.702. Such an exception would only be necessary if tobacco use is a health status-related factor.

Attempting to avoid this conclusion, Defendant urges the Court to reject the DOL regulations because, after *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Court no longer defers to an agency's interpretation of a statute. Mot. 13. But "*Loper Bright* does not permit courts to discard valid regulations; it simply removes mandatory deference." *Baker*, 2026 WL 473252, at \*5 (citing *Loper Bright*, 603 U.S. at 403). Even after *Loper Bright*, regulations retain their "power to persuade, if lacking power to control." *Loper Bright*, 603 U.S. at 402 (citation omitted). However, the Court considers the regulations persuasive here as they align with the best reading of the statute. It is noteworthy that Defendant does not cite a single case, nor is the Court aware of one, where a court held that tobacco use is not a health status-related factor. On the contrary, courts have found that tobacco use is a health status-related factor. *See, e.g., Baker*,

2026 WL 473252, at *4-5. The Court finds that tobacco use is a health status-related factor and declines to dismiss Plaintiffs' ERISA claims on this ground.

### b. Full Reward

Because tobacco use is a health status-related factor, Defendant must make a compliant wellness program available to Plan participants to lawfully assess a tobacco surcharge. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3). The wellness program must, among other things, make the "full reward . . . available to all similarly situated individuals." 42 U.S.C. § 300gg-4(j)(3)(D). Defendant contends that its wellness program is compliant because it offered the full reward—the elimination of the tobacco surcharge—prospectively from the date a participant completed the tobacco cessation program. Mot. 13-14.

Neither ERISA nor the codified DOL regulations define "full reward." However, in the preamble to the DOL regulations, the DOL defined "full reward" to include retroactive reimbursement of surcharges paid during the plan year. Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158-01, 33163 (June 3, 2013). While Plaintiffs do not contend that the preamble carries the force of law, Plaintiffs argue that the "regulatory preamble[] [is] authoritative evidence of an agency's contemporaneous understanding of its regulations." Resp. 21 n.12. Plaintiffs claim that the Court must defer to DOL's interpretation of its own regulation under *Auer v. Robbins*, 519 U.S. 452 (1997). Compl. ¶ 3. The Court disagrees.

Plaintiffs are correct that courts "often defer[] to agencies' reasonable readings of genuinely ambiguous regulations." *Kisor v. Wilkie*, 588 U.S. 558, 563 (2019). However, "*Auer* deference is not warranted 'when an agency interprets a rule that parrots the statutory text.'" *Wilson*, 2026 WL 196517, at *8 (quoting *Kisor*, 588 U.S. at 568 n.5). "An agency . . . gets no 'special authority to interpret its own words when, instead of using its expertise and experience to

formulate a regulation, it has elected merely to paraphrase the statutory language.'" *Kisor*, 588 U.S. at 578 n.5 (quoting *Gonzalez v. Oregon*, 546 U.S. 243, 257 (2006)).

Here, the regulation at issue is substantially identical to the statute. *Compare* 29 C.F.R. § 2590.702(f)(4)(iv) ("The full reward under the . . . wellness program must be available to all similarly situated individuals.") *with* 42 U.S.C. § 300gg-4(j)(3)(D) ("The full reward under the wellness program shall be made available to all similarly situated individuals."). Therefore, the Court applies the anti-parroting canon and declines to defer to DOL's interpretation of the regulation.

Plaintiffs and Defendant each point to separate district court cases where the court, after declining to apply *Auer* deference, found that a full reward either did, or did not, require retroactive reimbursement. Resp. 14-17; Pls.' Notice 1; Reply 6-7; Def.'s Notice 2-3. Though none of the cases are binding, the Court agrees with those courts that have held that a wellness program need only offer the "full reward" prospectively, not retroactively. *See Williams v. Bally's Mgmt. Grp., LLC*, 813 F. Supp. 3d 263, 279 (D.R.I. 2025) ("[T]he Court declines to read a retroactive reimbursement requirement into the meaning of 'full reward[.]'"); *Noel v. Pepsico, Inc.*, No. 24-CV-7516(CS), 2026 WL 558118, at *10 (S.D.N.Y. Feb. 27, 2026) (holding that a "full reward" requires "the complete removal of the surcharge" prospectively), *appeal docketed*, No. 26-862 (2d Cir. Apr. 6, 2026); *Greene v. Progressive Corp.*, No. 1:24-CV-01890, 2026 WL 785004, at *10 (N.D. Ohio Mar. 20, 2026) (holding that, in cases of plans that offer only prospective relief, "[t]he full reward is still obtained going forward, and the term full was necessary to clarify that an individual who stopped smoking . . . would not be subject to a *reduced* reward. . . . Consequently, the statute reasonably reads as applying the full reward, not a reduced reward, to participants when they satisfy the wellness program"). Had Congress intended the "full reward" to include retroactive

reimbursement, Congress would have said so. *See Plesha v. Ascension Health All.*, No. 4:24-CV-01459-CMS, 2026 WL 279321, at *4 (E.D. Mo. Feb. 3, 2026) ("If Congress intended for all [ERISA] rewards to operate like a rebate, . . . then Congress would have simply mandated that the reward must be in the form of a rebate only."). In sum, the Court holds here that, to offer the "full reward" under ERISA, a wellness program must only eliminate a tobacco surcharge prospectively, not retroactively. Because Defendant's wellness program did so, the Court dismisses with prejudice Count I.

### ii. Count II

In addition to offering the "full reward," for the Plan to be compliant with ERISA, all Plan documents that describe the wellness program's terms must include the availability of a reasonable alternative, contact information for obtaining such an alternative, and "a statement that recommendations of an individual's personal physician will be accommodated."[2] 29 C.F.R. § 2590.702(f)(4)(v). Defendant published two relevant documents: the benefits guide and the SPD. Mot. 8, 18. Plaintiffs allege that Defendant's disclosure, contained in the Plan's benefits guide, "fail[ed] to provide contact information and fail[ed] to inform participants that personal physicians' recommendations will be accommodated." Compl. ¶ 38. Plaintiffs contend that the Plan's benefits guide stated, in relevant part, that Defendant offers a tobacco cessation program and that "[t]o find out more about the Tobacco Cessation Program, please call the number on the back of your medical ID card." *Id.* ¶ 36. The benefits guide continued, "If you do not meet the tobacco-free requirement, you may be eligible to avoid the surcharge by submitting confirmation

---

[2] The regulations include the following sample language: "Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status." 29 C.F.R. § 2590.702(f)(6).

of being under a physician's care for tobacco or nicotine use." *Id.* Plaintiffs' own allegations, then, show that the disclosure in the benefits guide included the availability of a reasonable alternative, contact information, and that a participant's physician recommendations will be accommodated. Thus, the Court finds that the disclosure contained in the benefits guide complied with the regulatory requirement.

Defendant also published a summary plan description that described the Plan's terms. Mot. 18 n.5 ("[T]he only Plan documents in effect during [Plaintiffs'] employment were the SPDs."). Plaintiffs allege that the Plan's SPDs did not include any disclosure, much less a compliant one. *Id.* ¶¶ 10, 38, 72. Defendant does not dispute that the SPDs did not contain a disclosure. Rather, Defendant argues that the SPDs did not require a disclosure because the SPDs merely mentioned, but did not describe, the terms of the wellness program. Mot. 18-19. Defendant relies on 29 C.F.R. § 2590.702(f)(4)(v), which states that "[i]f plan materials merely mention that such a program is available, without describing its terms, [the] disclosure is not required."

While Defendant is correct that the SPDs merely mention the availability of a wellness program, SPDs must "be sufficiently accurate and comprehensive to reasonably apprise . . . participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).[3] Further, the Plan's benefits guide states that "[i]t is not a legal plan document" and that "full details of the plans are contained in the [SPDs], which govern each plan's operation. Whenever an interpretation of a plan benefit is necessary, the actual plan documents will be used." App. in Supp. of the Mot. [ECF No. 51] Ex. A-5, at 405.[4] Defendant's wellness program affects the Plan's

---

[3] In addition, the DOL, in the preamble to the regulations, stated that "wellness program terms . . . are generally required to be disclosed in the [SPD] . . . if compliance with the wellness program affects premiums, cost sharing, or other benefits under the terms of the plan." 78 Fed. Reg. at 33166 n.24.

[4] The Court may consider documents attached to the Motion if they are referred to in Plaintiffs' complaint and central to their claim. *Sligh v. City of Conroe*, 87 F.4th 290, 297 (5th Cir. 2023) (citation omitted).

13

participants' rights and obligations under the Plan because it affects whether they are charged the tobacco surcharge. Therefore, the Court finds that to be sufficiently accurate and comprehensive as required under ERISA, the SPDs must describe the wellness program and contain a compliant disclosure. Because Defendant concedes that the SPDs merely mention the wellness program and do not contain any disclosure, Mot. 18-19, Plaintiffs plead sufficient facts to state a claim to relief that is plausible on its face. The Court denies the Motion as to Count II.

### iii. Counts III and IV

Finally, Plaintiffs bring two claims of breach of fiduciary duty, one on behalf of the Plan, and one of behalf of themselves and the purported class. Compl. ¶¶ 75-100. Applying the facial plausibility jurisprudence of *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and accepting all well-pleaded facts as true, and viewing them in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs plead sufficient facts to state a claim to relief that is plausible on its face for both the Plan and themselves. The Court denies the Motion with respect to Counts III and IV.[5]

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant United Surgical Partners International, Inc.'s Motion to Dismiss for Lack of Standing Under Federal Rule 12(b)(1) and for Failure to State a Claim Under Federal Rule 12(b)(6) [ECF

---

Plaintiffs, as part of their allegation that Defendant's wellness program was noncompliant because the Plan documents failed to include the required disclosure, specifically reference both the benefits guide and the SPD. *See, e.g.*, Compl. ¶ 10. Therefore, the Court may consider the benefits guides and SPDs attached to the Motion.

[5] Defendant argues that Counts III and IV are duplicative of Counts I and II and thus must be dismissed. Mot. 23. The Court disagrees with Defendant's contention at this stage as Plaintiffs' allegations in Counts III and IV involve the mismanagement of Plan funds. But even assuming arguendo that Defendant is correct, Plaintiffs are permitted to plead claims in the alternative. *See* FED. R. CIV. P. 8(d)(2).

14

No. 50]. The Court **DISMISSES WITH PREJUDICE** Count I and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' request for prospective relief. The Court **DENIES** the Motion as to Counts II, III, and IV, to the extent Plaintiffs do not seek prospective relief.

**SO ORDERED.**

SIGNED July 23, 2026.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

15